Com. ex rel. Schultz *v.* Smith, Warden.

Argued December 15, 1939.

*Henry D. O'Connor,* with him *William F. Quinlan,* for petitioner.

358

*John H. Maurer,* Assistant District Attorney, with him *Charles F. Kelley,* District Attorney, for respondent.

OPINION BY KELLER, P. J., March 2, 1940:

This is a petition for writ of habeas corpus. When it was argued before us last December, it appeared that certain important matters of fact raised by the petition were not admitted in the answer and, accordingly, we directed the writ to issue and fixed a hearing for the purpose of receiving testimony upon the following questions of fact: (1) Whether or not the relator was represented by counsel on the trial in court which resulted in his conviction and sentence to the penitentiary, pursuant to which he is now confined there; (2) whether or not the trial judge inquired of relator at said trial if he had counsel, or desired counsel, and offered to appoint counsel to defend him, if he was not then represented by counsel; (3) whether or not the relator by his conduct waived his right to have counsel represent him on said trial.

That hearing has now been had and the testimony of the relator, the trial judge and the assistant district attorney has been taken, and from them the following facts are established, without contradiction: (1) The relator was not represented by counsel on his trial in court. (2) The trial judge inquired of the relator, when the cases were called for trial, if he was represented by counsel. On the relator's replying 'No', the trial judge did not ask relator whether he desired counsel, and did not appoint, or offer to appoint counsel to defend him. (3) The relator did nothing which could reasonably be held to amount to a waiver of his right to be represented by counsel at said trial.[1]

---

[1] The relator knew that he had a right to *employ* counsel, but he had no money to do so. He did not know that it was the duty of the trial court to appoint counsel for him until some five or six years after his conviction.

The relator was tried on May 11, 1931, at one time, on the four following bills of indictment found at May Sessions 1931 of Philadelphia County. No. 310, containing seven counts: (1) Assault and battery; (2) aggravated assault and battery; (3) assault and battery with intent to ravish; (4) attempted rape; (5) rape upon Helen Crown, a woman child under sixteen years of age; (6) incestuous fornication with his step-daughter, the said Helen Crown; (7) incestuous adultery with his step-daughter the said Helen Crown—the date of the offenses being laid as April 22, 1930, when Helen Crown was fifteen years and eleven months old. No. 311, containing the same seven counts with respect to another step-daughter, Frances Crown, a woman child under sixteen years of age, the offense being laid as of date, December 27, 1930, when she was nearly, if not quite, fifteen years old. No. 312, containing the same seven counts with respect to Frances Crown, laying the offense as of another date, September 10, 1930. No. 313 charged fornication with the aforesaid Helen Crown on July 14, 1930 and the birth of a bastard child [on April 14, 1931].

General verdicts of guilty were rendered on all bills on May 11, 1931, and the next day sentences were imposed on Nos. 312 and 310 to run consecutively, as follows: Bill No. 312—"Sentence. Not less than seven (7) years and six (6) months, nor more than fifteen (15) years in the Eastern State Penitentiary on the charge of rape, and further sentence of not less than one (1) year and six (6) months nor more than three (3) years in Eastern State Penitentiary on the charge of incestuous adultery, sentence to commence after serving sentence on charge of rape, and further sentence to not less than two (2) years and six (6) months nor more than five (5) years in Eastern State Penitentiary on

360

the charge of assault and battery, aggravated, attempted ravish and rape sentence to commence after serving sentence on charge of incestuous adultery."

Bill No. 310—"Sentence. Not less than seven (7) years and six (6) months, nor more than fifteen (15) years in the Eastern State Penitentiary on the charge of rape, and further sentence of not less than one (1) year and six (6) months nor more than three (3) years in Eastern State Penitentiary on the charge of incestuous adultery, sentence to commence after serving sentence on charge of rape, and further sentence to not less than two (2) years and six (6) months nor more than five (5) years in Eastern State Penitentiary on the charge of assault and battery, aggravated, attempted ravish and rape sentence to commence after serving sentence on charge of incestuous adultery. All sentences on this Bill to commence after serving sentences on Bill No. 312 May 1931."

No sentences were imposed on Bills No. 311 and 313. The defendant did not appeal, and was committed to the penitentiary in accordance with said sentences, the aggregate on both bills being a minimum of twenty-three years and a maximum of forty-six years.

We may say in passing that all the counts in Bill No. 312 related to the same sexual act; and all the counts in Bill No. 310 related to the same sexual act. The minor charges were swallowed up in the conviction on the greater charge of rape, and would not justify additional sentences (*Johnston v. Com.*, 85 Pa. 54, 65; *Com. v. Birdsall*, 69 Pa. 482; *Com. ex rel. Ciampoli v. Heston*, 292 Pa. 501, 141 A. 287; *Com. v. Clark*, 123 Pa. Superior Ct. 277, 296, 187 A. 237) ; and the severest sentence of imprisonment which could be legally imposed on each bill was not less than seven and one-half years nor more than fifteen years in the penitentiary, to run consecutively; and the sentences should be corrected accordingly.

But a more serious question is presented.

In *Com. v. Jester*, 256 Pa. 441, 100 A. 993, also a prosecution for rape, the defendant had employed counsel to represent him, but was brought from jail into court seven days after his arrest and two days after a true bill was found against him, without notice to him or his counsel that he would be placed on trial that day. The Supreme Court, in an opinion reversing this Court, said: "Section 9 of Article I, of the Constitution of Pennsylvania provides that 'In all criminal prosecutions the accused hath a right to be heard by himself and his counsel,' and 'to have compulsory process for obtaining witnesses in his favor.' Considering the serious nature of the charge against defendant, the short time intervening between his arrest and trial, and the absence of an opportunity to properly prepare and present a defense and procure the attendance of witnesses, if he had any, it cannot be said he was accorded the right to be heard by himself and counsel, in accordance with his constitutional rights. When defendant was brought from the county jail to the court room, two days after a true bill had been found against him, neither he, nor his counsel, had notice or knowledge, that he would be placed on trial on that day. Having engaged an attorney to represent him, he naturally assumed his rights were being properly safeguarded, and that the attorney, at least, had knowledge of the purpose for which he was taken from prison. In view of the seriousness of the charge, and under all the circumstances, defendant should not have been forced to trial without counsel, and ample time should have been given him, or reasonable efforts made by the court attendants, to notify his attorney of the intention to try the case. Even though defendant, immediately previous to the trial, made no specific request to be represented by counsel, his ignorance of his rights in the matter, under the circumstances of this case, is a sufficient excuse for that default. He could hardly be expected to ask for counsel, when he had already retained an at-

torney whose name was endorsed on the bill of indictment. Under these circumstances, it was the duty of the district attorney to call the attention of the court to the fact, and the court, in fairness to defendant, should then either have sent for the counsel or appointed another to act in his stead, if he could not be found."

We followed this case in *Com. v. Richards,* 111 Pa. Superior Ct. 124, 129, 169 A. 464, and after citing extracts from the opinion of the court in *Com. v. Jester,* supra, and from the opinion of Mr. Justice SUTHERLAND in *Powell v. Alabama,* 287 U. S. 45, which contained a reference to *Hendryx v. State,* 130 Ind. 265, 268, 269, 29 N. E. 1131, we said: "The right to be represented by counsel is a fundamental right, going to the very basis of the administration of the criminal law, and places on the trial judge the onus to inform the defendant of his rights and to assist him in obtaining the benefits of those rights. The failure of the court to inform him of his rights amounts to a denial of the right ...... The failure of the court to so inform him or to appoint counsel for him was fundamental error."

And again in *Com. v. Valerio,* 118 Pa. Superior Ct. 34, 178 A. 509, an indictment for robbery, the defendant was not represented by counsel at the trial and no counsel was appointed for him. In the trial judge's opinion, the following appears, "While the name of the Voluntary Defender was noted on the trial list opposite the listing of the case, the court was advised that he would not appear at defendant's trial as counsel," but no steps were taken by the trial judge to supply his place. The defendant was sentenced from ten to twenty years. We reaffirmed what had been said in *Com. v. Richards,* supra, and reversed the judgment, saying in part: "Courts sit not only for the disposition of business, but primarily for the dispensation of justice. The trial judge was no doubt prompted by the best motives, and while there may not have been much doubt as to the guilt of the defendant, yet his conviction should not

be attended by a denial of constitutional rights guaranteed to every individual."

These were all cases where appeals were taken by the respective defendants within the time prescribed by law, and the district attorney distinguishes the present proceeding from them on that ground, citing the well established principle that a habeas corpus proceeding cannot be used as a substitute for an appeal.

However, in the recent case of *Johnson v. Zerbst,* 304 U. S. 458, the Supreme Court of the United States reviewed a judgment of the Circuit Court of Appeals for the 5th Circuit, affirming the judgment of a United States District Court which had denied the petitioner a writ of habeas corpus, applied for on the ground that he had been deprived, in the trial court, of his constitutional right under the provision of the Sixth Amendment that "In all criminal prosecutions the accused shall enjoy the right ...... to have the Assistance of Counsel for his defense." The district court held that the proceedings depriving him of his constitutional right were not sufficient "to make the trial void and justify its amendment in a habeas corpus proceeding, but that they constituted trial errors or irregularities which could only be corrected on appeal." The Supreme Court reversed, saying in part as follows: "The Sixth Amendment stands as a constant admonition that if the constitutional safeguards it provides be lost, justice will not 'still be done.' It embodies a realistic recognition of the obvious truth that the average defendant does not have the professional legal skill to protect himself when brought before a tribunal with power to take his life or liberty, wherein the prosecution is presented by experienced and learned counsel. That which is simple, orderly and necessary to the lawyer, to the untrained layman may appear intricate, complex and mysterious. Consistently with the wise policy of the Sixth Amendment and other parts of our fundamental charter, this Court has pointed to '...... the humane policy of the

modern criminal law . . . . . .' which now provides that a
defendant '. . . . . . if he be poor, . . . . . . may have
counsel furnished him by the state . . . . . . not infre-
quently . . . . . . more able than the attorney for the
state.' [*Patton v. United States*, 281 U. S. 276, 308]

"The '. . . . . . right to be heard would be, in many
cases, of little avail if it did not comprehend the right
to be heard by counsel. Even the intelligent and edu-
cated layman has small and sometimes no skill in the
science of law. If charged with crime, he is incapable,
generally, of determining for himself whether the in-
dictment is good or bad. He is unfamiliar with the
rules of evidence. Left without the aid of counsel he
may be put on trial without a proper charge, and con-
victed upon incompetent evidence, or evidence irrele-
vant to the issue or otherwise inadmissible. He lacks
both the skill and knowledge adequately to prepare his
defense, even though he have a perfect one. He requires
the guiding hand of counsel at every step in the pro-
ceedings against him.' [*Powell v. Alabama*, 287 U. S.
45, 68, 69] The Sixth Amendment withholds from fed-
eral courts, in criminal proceedings, the power and
authority to deprive an accused of his life or liberty
unless he has or waives the assistance of counsel . . . . . .
(pp. 462, 463).

"The constitutional right of an accused to be repre-
sented by counsel invokes, of itself, the protection of a
trial court, in which the accused—whose life or liberty
is at stake—is without counsel. This protecting duty
imposes the serious and weighty responsibility upon the
trial judge of determining whether there is an intelli-
gent and competent waiver by the accused. While an
accused may waive the right to counsel, whether there
is a proper waiver should be clearly determined by the
trial court, and it would be fitting and appropriate for
that determination to appear upon the record . . . . . .
(p. 465).

"The purpose of the constitutional guaranty of a right

to counsel is to protect an accused from conviction resulting from his own ignorance of his legal and constitutional rights, and the guaranty would be nullified by a determination that an accused's ignorant failure to claim his rights removes the protection of the Constitution. True, *habeas corpus* cannot be used as a means of reviewing errors of law and irregularities—not involving the question of jurisdiction—occurring during the course of trial; and the 'writ of *habeas corpus* cannot be used as a writ of error.' [*Woolsey v. Best*, 299 U. S. 1, 2] These principles, however, must be construed and applied so as to preserve—not destroy—constitutional safeguards of human life and liberty. The scope of inquiry in *habeas corpus* proceedings has been broadened—not narrowed—since the adoption of the Sixth Amendment. In such a proceeding, 'it would be clearly erroneous to confine the inquiry to the proceedings and judgment of the trial court' [*Frank v. Mangum*, 237 U. S. 309, 327] and the petitioned court has 'power to inquire with regard to the jurisdiction of the inferior court, either in respect to the subject matter or to the person, even if such inquiry ...... [involves] an examination of facts outside of, but not inconsistent with, the record.' [In re *Mayfield*, 141 U. S. 107, 116] Congress has expanded the rights of a petitioner for *habeas corpus* and the '...... effect is to substitute for the bare legal review that seems to have been the limit of judicial authority under the common law practice, and under the Act of 31 Car. II, c.2, a more searching investigation, in which the applicant is put upon his oath to set forth the truth of the matter respecting the causes of his detention, and the court, upon determining the actual facts, is to "dispose of the party as law and justice require."

" 'There being no doubt of the authority of the Congress to thus liberalize the common law procedure on *habeas corpus* in order to safeguard the liberty of all persons within the jurisdiction of the United States

against infringement through any violation of the Constitution or a law or treaty established thereunder, it results that under the section cited[2] a prisoner in custody pursuant to the final judgment of a state court of criminal jurisdiction may have a judicial inquiry in a court of the United States into the very truth and substance of the causes of his detention, although it may become necessary to look behind and beyond the record of his conviction to a sufficient extent to test the jurisdiction of the state court to proceed to a judgment against him ...... it is open to the courts of the United States upon an application for a writ of *habeas corpus* to look beyond forms and inquire into the very substance of the matter .......' [*Frank v. Mangum*, supra, 330, 331] (pp. 465,466).

"Since the Sixth Amendment constitutionally entitles one charged with crime to the assistance of counsel, compliance with this constitutional mandate is an essential jurisdictional prerequisite to a federal court's authority to deprive an accused of his life or liberty. When this right is properly waived, the assistance of counsel is no longer a necessary element of the court's jurisdiction to proceed to conviction and sentence. If the accused, however, is not represented by counsel and has not competently and intelligently waived his constitutional right, the Sixth Amendment stands as a jurisdictional bar to a valid conviction and sentence depriving him of his life or his liberty. A court's jurisdiction at the beginning of trial may be lost 'in the course of the proceedings' due to failure to complete the court—as the Sixth Amendment requires—by providing counsel for an accused who is unable to obtain counsel, who has not intelligently waived this constitutional guaranty, and whose life or liberty is at stake. If this requirement of the Sixth Amendment is not complied with, the court no longer has jurisdiction to pro-

---

[2] 28 U. S. C. ch. 14, sec. 451 *et seq.*

ceed. The judgment of conviction pronounced by a court without jurisdiction is void, and one imprisoned thereunder may obtain release by *habeas corpus*. A judge of the United States—to whom a petition for *habeas corpus* is addressed—should be alert to examine 'the facts for himself when if true as alleged they make the trial absolutely void.' [*Moore v. Dempsey,* 261 U. S. 86, 92]" (pp. 467, 468).

We do not have to go as far as the writer of the majority opinion in *Johnson v. Zerbst,* supra, (Mr. Justice BLACK), and hold that the failure of the trial judge to offer to appoint for a defendant, accused of serious crime, counsel to defend him, was such a *jurisdictional* defect as deprived the court of *jurisdictional* authority to try him, for under the liberal and humane construction given by our Supreme Court to our Habeas Corpus Act (February 18, 1785, 2 Sm. L. 275), and the practice which has been established concerning it, there are certain basic and fundamental errors which may be corrected on habeas corpus, even though the defendant failed to appeal from the judgment, and which are recognized as exceptions to the principle relied on by the district attorney. For example, where an erroneous and illegal sentence has been imposed (*Com. ex rel. Smith v. Smith,* 324 Pa. 73, 74, 187 A. 387; *Com. ex rel. Wilhelm v. Morgan,* 278 Pa. 395, 123 A. 337; *Com. v. Curry,* 285 Pa. 289, 132 A. 376; *Com. ex rel. Fagan v. Francies,* 53 Pa. Superior Ct. 278; *Halderman's Case,* 53 Pa. Superior Ct. 554), whether it be excessive, (*Com. ex rel. Bishop v. Smith,* 123 Pa. Superior Ct. 79, 186 A. 763), or a lumping sentence (*Com. ex rel. Hallett v. McKenty,* 80 Pa. Superior Ct. 249, 250), or a double sentence for the same offense (*Com. ex rel. Ciampoli v. Heston,* 292 Pa. 501, 141 A. 287), or where the minor offense is swallowed up in the greater (*Com. ex rel. Wendell v. Smith,* 123 Pa. Superior Ct. 113, 186 A. 810), or where the sentence was increased after the end of the term (*Halderman's Petition,* 276

Pa. 1, 4, 119 A. 735), it may be corrected on habeas corpus, for the error is basic and fundamental and so destructive of justice, that it cannot be permitted to stand, even though not appealed from.

So here, the denial of counsel to one accused of such grave crimes as were involved in this case, is not only a denial of a constitutional right, but is a basic and fundamental error striking at the fairness and justice of the whole trial, which cannot always or even generally be reached in like circumstances by allowing him the right to appeal from the judgment, for how is the accused who has been deprived of counsel to know whether the trial was conducted fairly and with due regard to his legal rights, whether error was committed in the admission or rejection of evidence, whether the charge of the court was fair, and accurately and justly presented the case to the jury, or any of the matters ordinarily correctable by appeal and so vividly portrayed in the above quotation from the opinion in *Powell v. Alabama,* supra, cited in *Johnson v. Zerbst,* supra, pp. 462, 463? To deprive one accused of a grave crime of his constitutional right to be represented by counsel, and then hold that this basic and fundamental error cannot be taken advantage of except by an appeal from the judgment, to be taken within forty-five days by a prisoner who is not aware of his rights, is not versed in the law, has no attorney and no means to procure one, would be an injustice which our law does not sanction. Such a basic and fundamental error, which affects the justice and regularity of the whole trial, may be relieved against in this Commonwealth by writ of habeas corpus.

However, it is not the practice in this Commonwealth, as it seems to be in the federal courts, always to *discharge* a prisoner where basic and fundamental error has been made in sentencing persons convicted of crime. In this state, the error may be corrected by the court on habeas corpus, or the prisoner remanded to the court

below to be sentenced legally and in accordance with law.

So, in this case, it must not be understood that one convicted of serious crime, who has not been represented by counsel and has not waived his right to have such counsel, may take no appeal and by bringing his writ of habeas corpus be discharged from custody after a brief imprisonment. Such a course might become a racket. Ordinarily, in such circumstances, where the relator has suffered only a brief imprisonment, he should be remanded for a new trial, to be held in accordance with his constitutional rights.

In this case, however, the relator has served nearly nine years' imprisonment, a very substantial part of the sentence imposed upon him. To try him again at this time, after this lapse of years, would probably be most unfair. There are other circumstances averred in the petition and not denied in the answer, which confirm us in this view.

We are of opinion, therefore, that in the circumstances here present the petitioner is entitled to his discharge.

It is so ordered.