Opinion by
 

 Keller, P. J.,
 

 This is a petition for writ of habeas corpus. The relator is confined in the Eastern State Penitentiary, under sentence by the Court of Oyer and Terminer of Philadelphia County (Millar, J.), following his pleas of guilty to four bills of indictment, returned against him, under the name, George Shaw, alias Wayne Stanley, on April 5, 1937, to April Sessions 1937, Nos. 2, 3, 4, and 5, as follows:
 

 No. 2 — Bobbery, while armed with an offensive weapon.
 

 No. 3 — Felonious entry, and robbery from the person.
 

 No. 4 — Assault and battery, three counts.
 

 No. 5 — (1) Carrying concealed deadly weapon; (2) carrying firearm without license.
 

 On April 7, 1937 he pleaded guilty in open court to all four bills, except that as to No. 4, he pleaded ‘not guilty’ to the count charging assault and battery with intent to kill, thereby showing that he understood the charges. He was sentenced on No. 2 to imprisonment in the Eastern State Penitentiary for not less than ten years nor more than twenty years. The entry on the other bills was, “Sentence on No. 2.”
 

 The petition for the writ of habeas corpus set up the following grounds for discharge: That at the time of entry of the plea of guilty he was not represented by counsel; that the trial judge did not ask him if he desired counsel, or offer to appoint counsel; that he did
 
 *425
 
 not know his right to have counsel represent him
 
 at said trial;
 
 nor did he waive that right.
 

 He did not deny his guilt or aver that he had not committed the crimes charged in the indictments, or that he did not understand the nature of the offenses to which he had pleaded'guilty; but claimed, nevertheless, to have been “deprived of his constitutional right as set forth in a recent decision of the United States Supreme Court.”
 

 In the brief filed by counsel on his behalf)' reliance is put on the case of
 
 Walker v. Johnston,
 
 312 U. S. 275, decided February 10, 1941, on certiorari to the Circuit Court of Appeáls for the Ninth Circuit, to review the affirmance of a judgment in habeas corpus, discharging a rule to show cause and dismissing the petition for the writ. The petitioner was confined in the Federal prison at Alcatraz, California, under commitment pursuant to sentence of twelve years’ imprisonment imposed by the District Court for Northern Texas upon a plea of guilty to an indictment charging armed robbery of a nátional bank under Federal statutes. In that case, it appears,
 
 inter alia,
 
 from the opinion of the Supreme Court that the petitioner not only denied that he was guilty of the offense to which he had pleaded guilty (p. 282), but also denied that he had stated to the United States Attorney, his assistant or the probation officer, or to the judge that he was guilty, and intended to plead guilty, (pp. 280-281); and averred that the District Attorney sought to persuade him to plead guilty, warning him that he would be sentenced to twice as great a term if he did not so plead. He denied that the evidence produced on the trial of his co-defendant White, who was jointly indicted with him, pleaded ‘Not guilty’ and was tried and convicted, showed his (petitioner’s) guilt. The circumstances were such that the Supreme Court ruled “that if the facts alleged [by the petitioner] were established by testimony to the
 
 *426
 
 satisfaction. of the judge, they would support a conclusion that the petitioner desired the aid of counsel, and so informed the District Attorney, was ignorant of his right to such aid, was not interrogated as to his desire or informed of his right, and did not knowingly waive that right, and that, by the conduct of the District Attorney, he was deceived and coerced into pleading guilty when his real desire was to plead not guilty or at least to be advised by counsel as to his course.” The ruling was largely based on the decision, in
 
 Johnson v. Zerbst,
 
 304 U. S. 458.
 

 Shortly after the last-named case was reported, we had occasion to consider it in connection with the petition in habeas corpus of Otto Schultz, who had been sentenced to the Eastern State Penitentiary on four indictments for indeterminate terms aggregating not less than 23 years nor more than 46 years. We ruled that the aggregate of the terms which could legally have been imposed on him was a minimum of 15 years and a maximum of 30 years. He had served nine years of this imprisonment. Applying the legal principles enunciated in that case — which, however, dealt with imprisonment in a federal prison following conviction in a federal court
 
 [1]
 
 — we discharged the relator from custody, because in the circumstances attending that trial, as adduced, at the hearing before ns, we felt, that he had been deprived of the constitutional right guaranteed by section 9, of Article I — or Declaration of Bights — of our State Constitution.
 
 [2]
 
 We were influenced in that
 
 *427
 
 decision by the fact that, irrespective of whether that section of onr Declaration of Rights
 
 requires
 
 a court on the trial of a defendant accused of- serious crime, who has no counsel to defend him on the trial, to furnish himi with the assistance of counsel, it had been the uniform practice for many years in all the counties of the State of which the members of this court had personal knowledge or experience — except Philadelphia County — for the court in such cases to offer a defendant, going to trial on a serious charge without counsel, to appoint counsel to assist him in his defense. See
 
 Com. ex rel. Schultz v. Smith, Warden,
 
 139 Pa. Superior Ct. 357, 11 A. 2d 656. However, we ruled a month later that when a defendant appeared in open court before trial, and pleaded guilty to an indictment returned as a true bill, or to a “district attorney’s bill,” prepared under the provisions of the Act of April 15, 1907, P. L. 62, without presentation to a grand jury,
 
 [3]
 
 there was no constitutional duty resting on the court under Art. I, sec. 9, of our State Constitution, or under the ‘Due Process’ clause of the Fourteenth Amendment of the Federal Constitution, prior to the entry of such plea, to appoint counsel for the defendant:
 
 Com. ex rel. Curtis v. Ashe, Warden,
 
 139 Pa. Superior Ct. 417, 12 A. 2d 500. See also,
 
 Com. ex rel. Lucian v. Ashe, Warden,
 
 140 Pa. Superior Ct. 210, 13
 
 *428
 
 A. 2d 918;
 
 Com. ex rel. Cook v. Ashe, Warden,
 
 144 Pa. Superior Ct. 1, 3, 19 A. 2d 532;
 
 Com. ex rel. Billings v. Ashe, Warden,
 
 144 Pa. Superior Ct. 209, 211, 19 A. 2d 749;
 
 Com. ex rel. Slifko v. Ashe, Warden,
 
 144 Pa. Superior Ct. 593, 595, 20 A. 2d 799.
 

 Since this petition and its companions
 
 [4]
 
 were presented, pur Supreme Court has filed an opinion in the habeas corpus proceeding,
 
 Com. ex rel. McGlinn v. Smith, Warden,
 
 344 Pa. 41, 24 A. 2d 1, which in effect overrules our decision in
 
 Com. ex rel. Schultz v. Smith, Warden,
 
 supra, and holds that there is no duty resting on our courts, either under our State Constitution or the Amendments to the Federal Constitution, requiring them to appoint counsel for defendants, in other than capital cases, unless the assistance of counsel is asked for. The learned Justice discusses the recent cases in the Supreme Court of the United States,
 
 Powell v. Alabama,
 
 287 U. S. 45 (Sutherland, J.),
 
 Johnson v. Zerbst,
 
 304 U. S. 458 (Black, J.),
 
 Walker v. Johnston, Warden,
 
 312 U. S. 275, (Roberts, J.), and
 
 Smith v. O’Grady, Warden,
 
 312 U. S. 329, (Black,
 
 J.),
 
 and distinguishes them from the facts in the case before him, and points out that the first named decision related to a capital case; the second concerned a petitioner committed to a federal prison by a sentence of a federal court, who claimed he had been denied the right given him under the sixth amendment to: the Federal Constitution, which applies only to prosecutions under federal law:
 
 Hurtado v. California,
 
 110 U. S. 516, 534; the third involved the right of a federal prisoner to a
 
 hearing
 
 on habeas corpus proceedings, on his averment that he had inf ormed the District Attorney that he desired the aid of counsel and had been deceived
 
 *429
 
 and coerced into pleading guilty; and the fourth related to an appeal from a State Supreme Court, which had affirmed the denial of a writ of habeas corpus by a lower court, without a hearing, where the petitioner had averred in his petition that he had been denied notice of the real nature of the charge against him, that his
 
 request
 
 for the benefit and advice of counsel had been denied by the court and he had been inveigled by false statements of the state law enforcement officers into entering a plea of guilty to an offense punishable by twenty years to life imprisonment, in such circumstances as to amount to a denial of the due process of law guaranteed by the fourteenth amendment.
 

 The following language of Mr. Justice Maxey is most pertinent: “The right guaranteed by the Pennsylvania Constitution (Art. I, sec. 9) of an accused to be
 
 ‘heard by counsel’
 
 has never been challenged or abridged in this Commonwealth; the right of an accused to be
 
 supplied with counsel when none is ashed for
 
 was never until recent years asserted in this Commonwealth. This court has never countenanced the idea that the accused in a criminal case when the charge is other than murder is being deprived of a constitutional right if he is not informed in advance of his trial that counsel will be assigned him upon request......If this petition presents a case of ‘apparent need for’ the ‘extraordinary remedy' of habeas corpus, it is reasonable to expect that our courts will soon be flooded with like petitions. In this State during the years 1939-1940 there were in our criminal courts 37,221 pleas of guilty, 10,755 convictions in which a jury trial was waived, and 6,104 convictions after a jury trial. In the same period there were 3,703 defendants sentenced to state prisons or reformatories and 18,449 sentenced to local jails: If even 20% of the defendants who are here annually sentenced to prison were ‘without benefit of counsel’ and seek their discharge by writs of habeas corpus issuing out of the
 
 *430
 
 appellate courts, these two courts will annually have to hear and dispose of 1,107 [2,215 or 1,107 each] such cases. Our courts should not for the reasons offered in this petition turn loose upon society the hundreds of convicts who were sent to prison after
 
 pleading guilty
 
 or being adjudged guilty by a jury, unless the law imperatively requires them to do so, and there is no such requirement.” (Italics supplied).
 

 While the McGlinn case dealt with a relator who had pleaded ‘not guilty,’ was tried and convicted, after testifying in his own behalf, it is clear from the above italicized words that it applies in principle, no less— if not to an even greater degree — to a relator who, like this one, pleaded guilty without trial and who presented in his petition no denial of his guilt of the crime for which he was indicted, no request for counsel, and no allegation of any trick, deception, coercion or other misconduct on the part of the district attorney or the law enforcement officers which induced his plea.
 

 This Commonwealth in 1776 adopted as a part of its Constitution a Declaration of Eights, securing,
 
 inter alia,
 
 to one accused of a criminal offense the right to be heard by himself and his counsel, to demand the cause and nature of his accusation, to be confronted with the witnesses, to call for evidence in his favor, and a speedy public trial by an impartial jury of the country (Clause Ninth).
 
 [5]
 
 This was fifteen years before the adoption of the first ten amendments to the Federal Constitution, commonly known as the Bill of Eights, which secured
 
 *431
 
 to the
 
 people
 
 of the United States the same protection against violation of their personal rights and individual liberties by the Congress and the Federal Courts that they had secured to themselves by their State Constitutions, as respects their State Legislatures and State Courts. The clause above referred to was not adopted and transplanted into our basic law from the Common Law of England, for as pointed out by Mr. Justice Sutherland in
 
 Patton v. United States,
 
 281 U. S. 276, 307, under that law the accused in criminal cases could not testify in his own behalf and was not allowed counsel, it being the theory of the early English law that the judge occupied the place of counsel for the prisoner and was charged with the responsibility of seeing that he did not suffer from lack of other counsel. The clause was a new creation, expressive of a juster and more humane conception of the fundamental rights of persons accused of crime. It has been included, in substantially the same language, in all our succeeding Constitutions and has therefore been in force 165 years. During all that time, so far as our examination of the records shows, it has never been construed in this Commonwealth to require the court, except in capital cases, to appoint counsel for an accused who has not requested it, and who informs the district attorney and the court that he desires to enter a plea of guilty and in open court so pleads.
 

 This court includes among its members two judges who had long experience — seventeen to eighteen years— in the court of quarter sessions, before their appointment to this court; two judges who had experience as district attorneys, before they became members of this court; and several judges whose experience in the criminal courts goes back nearly fifty years, and none of them recalls a single instance, except in capital cases, where a court of oyer and terminer or quarter sessions appointed counsel for a prisoner, or accused,
 
 *432
 
 who appeared in open court and entered a plea of guilty to a criminal charge. Nor are any of us aware of the existence of such a practice in the Federal Courts in Pennsylvania, at least before the decision in
 
 Johnson. v. Zerhst,
 
 supra. It was the uniform practice for the presiding judge, before accepting the plea, to satisfy himself that the defendant knew what crime he was charged with and understood the plea; and if there was any doubt on the subject, or as to the defendant’s admission of guilt, he refused to accept the plea and ordered him to trial. It was this well-known practice which probably led the Supreme Court, speaking through Hr. Justice Maxey, to say in
 
 Com. ex rel. Jenkins v. Ashe, Warden,
 
 341 Pa. 334, 336, 19 A. 2d 472: “It must be presumed that when a defendant pleads guilty to an indictment exhibited to him he is aware of what he is pleading guilty to, and he cannot later be permitted to allege as a ground for his discharge from imprisonment his ignorance of the charge set forth in the indictment.”
 

 The practical effect of the matter must be considered. If, as pointed out by Mr. Justice Maxey, in the Mc-Glinn case, supra, there were 37,221 pleas of guilty entered in the criminal courts of this Commonwealth during the years 1939 and 1940 — an average of 18,610 a year — and 30% of them had no counsel — which is a
 
 low
 
 estimate for pleas of guilty — the courts would have had to appoint counsel in 5583 cases each year, and hold up the arraignment, plea, or trial until a consultation with counsel could be had, notwithstanding the defendants were guilty and knew it. Speedy justice, so long as it is fairly administered, is the crying need of the present hour, and the course suggested would simply clog the work of already burdened courts, without any appreciable benefit to the accused. We respectfully submit that the word, defense, as used in the phrase in the Sixth Amendment to the Federal Consti
 
 *433
 
 tution, “In all criminal prosecutions, the accused shall enjoy the right to a speedy and public* trial ...... and to have the Assistance of Counsel for his defense,” contemplates defense at a speedy and public
 
 trial;
 
 and Mr. Justice Black has said, “The very word ‘trial’ connotes decisions on the evidence and argument properly advanced in open court.”
 
 [6]
 

 The Fourteenth Amendment to the Federal Constitution, the ‘due process of law’ clause of which — equivalent to the clause in our Constitution: “Unless by the judgment of his peers or the law of the land,” — has been extended far beyond its original signification,
 
 [7]
 
 does not require that the ‘process of law’ in order to be ‘due,’ must be the same in all the states, or the same as prescribed for the Federal courts. “The State is free to regulate the procedure of its courts in accordance with its own conceptions of policy, unless in so doing it
 
 ‘offends some principle of justice so rooted in the traditions and conscience of our people as to he ranked asf fundamental’”
 
 (Italics supplied):
 
 Brown v. Missis
 
 sippi, 297 U. S. 278, 285;
 
 Snyder v. Massachusetts,
 
 291 U. S. 97, 105;
 
 Hurtado v. California,
 
 supra;
 
 Missouri v. Lewis,
 
 101 U. S. 22, 31;
 
 Lisenba v. California,
 
 314 U. S. 219, 62 Sup. Ct. 280, 290;
 
 Mooney v. Holohan, Warden,
 
 294 U. S. 103, 113. “Its procedure does not run foul of the Fourteenth Amendment because another method may seem to our thinking to be fairer or wiser or to give a surer promise of protection to the prisoner at the bar:”
 
 Snyder v. Massachusetts,
 
 supra.
 

 A judicial practice that has been non-existent for 165 years cannot be said to be so “rooted in the traditions and conscience of our people as to be ranked as fundamental.”
 

 The answer of the district attorney in this proceeding
 
 *434
 
 averred that the relator was caught red-handed, immediately after the robbery, following a chase by the police for a city square, during which time he was never out of sight of the officers, and, in the course of the chase, he shot a bystander, while firing his revolver at a pursuing policeman; and that the articles taken by him in the robbery were found on his person when captured. No denial to these averments was made by the relator by way of reply. The answer also averred his criminal record.
 

 We are of opinion that in the circumstances shown to be present in this case, the relator was not deprived of any fundamental right guaranteed by the Constitution of this Commonwealth or by the Federal Constitution.
 

 The rule is discharged and the petition is denied.
 

 [1]
 

 “The Sixth Amendment withholds from
 
 federal
 
 courts in all criminal proceedings, the power and authority to deprive an accused of his life or liberty unless he has or waives the assistance of counsel” (italics supplied):
 
 Johnson v. Zerbst,
 
 supra, p. 463.
 

 [2]
 

 “Sec. 9. Rights of Accused in Criminal Prosecutions. In all criminal prosecutions the accused hath a right to be heard by himself and his counsel, to demand the nature and cause of the accusation against him, to meet • the witnesses face to face, to
 
 *427
 
 have compulsory process for obtaining witnesses in his favor, and, in prosecutions by indictment or information, a speedy public trial by an impartial jury of the vicinage; he cannot be compelled to give evidence against himself, nor can he be deprived of his life, liberty or property, unless by the judgment of his peers or the law of the land.”
 

 Corresponding provisions of prior Constitutions:
 

 Constitution of 1776, Dec. of Rights, Cl. IX.
 

 Constitution of 1790, Art. IX, sec. 9, (Verbatim).
 

 Constitution of 1838, Art. IX, sec. 9, (Verbatim).
 

 [3]
 

 Held constitutional,
 
 Com. ex rel. Stanton
 
 v.
 
 Francies
 
 and
 
 Com. ex rel. Wheeler v. Francies,
 
 250 Pa. 496, 95 A. 527;
 
 Com. v. Framer,
 
 146 Pa. Superior Ct, 91, 100, 22 A, 2d 46,
 

 [4]
 

 Com. ex rel. Jackowski v. Fluck, Warden,
 
 147 Pa. Superior Ct. 434, 24 A. 2d 729;
 
 Com. ex. rel. Handrahan v. Smith, Warden;
 
 147 Pa. Superior Ct. 439, 24 A. 2d 731.
 

 [5]
 

 “Ninth. That in all prosecutions for criminal offenses, a man hath a right to be heard by himself and his council, to demand the cause and nature of his accusation, to be confronted with the witnesses, to call for evidence in his favor, and a speedy public trial, by an impartial jury of the country, without the unanimous consent of which jury he cannot be found guilty; nor can he be compelled to give evidence against himself; nor can any man be justly deprived of his liberty except by the laws of the land, or the judgment of his peers.”
 

 [6]
 

 Bridges v. The State of California,
 
 314 U. S. 252.
 

 [7]
 

 See dissenting opinion of Justice Holmes in
 
 Baldwin v. Missouri,
 
 281 U. S. 586, 695.