Opinion by
 

 Keller, P. J.,
 

 These three petitions for writs of habeas corpus presented precisely the same grounds for discharge
 
 [1]
 
 relied upon by the petitioners in
 
 Com. ex rel. Shaw v.
 
 
 *441
 

 Smith, Warden,
 
 147 Pa. Superior Ct; 423, 24 A. 2d 724, and Com.
 
 ex rel. Jackowski v. Finch, Warden,
 
 147 Pa. Superior Ct. 434, 24 A. 2d 729, which' were filed at the. same time by ■ the same counsel wlro represented these petitioners and have been refused by us; but they also present as an additional ground not raised in those petitions, an averment that each of the respective relators had been: advised by the district attorney that if ■ he would enter a plea of guilty he would receive a light, or lighter, sentence and that he was thus deceived and coerced by the district attorney,
 
 [2]
 
 (or, by his advice),
 
 [3]
 
 into entering his plea.
 

 Although none of the three petitioners alleged his innocence of the offenses to which he had pleaded guilty, in view of the averments as to the advice, deception, and coercion ; by . the district attorney, we ordered a hearing to be held on January 15, 1942, in order to determine the truth or falsity of the allegations contained in each of said petitions , to the effect, that the petitioner had been, advised by the district attorney that if he would enter a plea of guilty he, would receive a light, or lighter, sentence, and had been deceived and coerced by the district attorney into entering, said plea of guilty. At this hearing a majority of the court were present, and full opportunity was given the relators to prove the charges averred in their respective petitions.
 

 Handbahan and DeBartolo Petitions. Nos. 177 and Í81.
 

 The original records produced before us show that Joseph Handrahan, alias Thomas J. Nugent, alias Francis Burton, alias James Burton, and Daniel De Bartolo, alias Peter King, were jointly indicted on April 22, 1935 in the Court of Oyer and Terminer of
 
 *442
 
 Philadelphia County, to April Term 1935, No. 997, charged with having robbed Philip Salter on April 7, 1935, while armed with an offensive weapon. Handrahan was also separately indicted in the Court of Quarter Sessions, No. 998, charged with carrying (1) a concealed deadly weapon, (2) without a license. On April 24, 1935, they entered pleas of ‘Guilty’ in open court before Judge Heiligman. Before sentencing them Judge Heiligman heard the testimony of (1) Philip Salter, who had been held up in his delicatessen store and robbed of $27 at the point of a gun held by Handrahan, followed by another fellow, whom he could not identify; (2) of Officer Brown, who arrested the two of them on April 11, at 2:30 A.M. for throwing lighted matches into mail boxes, and later searched their room and found the revolver; and (3) of Detective Farley who questioned them, following their arrest, regarding the Salter robbery, which they admitted, Handrahan stating that he held up the proprietor with a gun, while De Bartolo took the money from the cash register. The two defendants signed a confession, taken down in the form of questions and answers, using their aliases, ‘Peter King’ and
 
 [1]
 
 ‘Francis Burton,’ or ‘Thomas J. Nugent.’
 

 At that hearing Assistant District Attorney, Charles C. Gordon, questioned the witnesses on behalf of the Commonwealth.
 

 Following this hearing, Judge Heiligman sentenced each of them on No. 997 to imprisonment in the Eastern State Penitentiary for a term of not less than ten years nor more than twenty years. No sentence was entered on No. 998.
 

 At the hearing before this court on January 15, 1942, these relators did not charge the District Attorney of Philadelphia County or Mr. Gordon, the assistant district attorney in charge of their prosecution, with hav
 
 *443
 
 ing given them any advice or made any threats or promises, to induce them to plead guilty. They said Mr. Gordon merely asked them if they were going to plead guilty, and they said,
 
 ‘Yes’
 
 Departing from the averments in their petition, they said that Detective Farley had told them that he was authorized by the district attorney’s office to tell them that if they pleaded guilty, they would not get over five to ten years, but if they stood trial they would get the limit, and that relying on this promise they had pleaded guilty. But they admitted at the hearing before us that they had signed the statement confessing their guilt, and that the statement was true; that they had robbed Salter’s delicatessen store in the manner described in the confession, This confession was signed on April 12, 1935. They were not brought into court for arraignment and plea until twelve days later, April 24. They further testified before us that after signing the confession, Handrahan had received a telegram from his brother, telling him that he had engaged a lawyer for him and that he was to ask for a postponement of his case; but that he could not get the assistant district, attorney or the clerk to listen to him; that the clerk told him to tell it to the court. Handrahan had plenty of opportunity at the hearing in court to tell the judge of this telegram,, while he was being questioned, but did not do so. Handrahan’s brother and mother corroborated the sending of the telegram and the engaging of counsel in Boston — whom they released as soon as they heard of his sentence. Nothing concerning this telegram had been averred in the petition, and the Commonwealth had no notice of it prior to the hearing.
 

 Detective Farley, being sworn, denied that he had told the relators that he represented the district attorney in any way or had made any promises or threats to them, previous to obtaining their signed statements
 
 *444
 
 or confessions, or at any other time; and Charles C. Gordon, testified that, while he had no present recollection of the matter, he had never made any promises, threats or inducements to any defendants accused of crime to obtain pleas of guilty. All of the judges of this court who heard thé evidence are satisfied that no advice had been given, nor any threats, coercion, deception or promises used by the district attorney’s staff, or by Detective Farley, to obtain relators’ pleas of guilty, and that they fully understood the nature of the offenses to which they pleaded guilty, and were, in fact, guilty as indicted; and we so find. We are further of opinion that if the telegram alleged to have been sent was sent, the relators, had ample opportunity to bring it to the court’s attention if they wanted to; that, in any event, it did not affect their guilt. Judge Heiligman, who sentenced relators, died before these petitions for habeas corpus were filed. ■
 

 Carwell’s Petition. No. 176.
 

 The original records produced before us show that Adam Carwell, the relator, was arrested on October 14, 1929 charged with highway robbery and robbery by force from the person of one David Rosenberg, in the City of Scranton, ánd, having been taken before a City Police Magistrate, admitted his guilt and was committed to answer said charge at the November, 1929 term of court.
 

 An indictment charging him with róbbéry, while armed with an offensive weapon, was prepared by the District Attorney of Lackawanna County to No. 2 November Term, 1929, Oyer and Terminer, on the back of which Carwell signed the following: “I, the undersigned, being charged, with the commission of a crime, to-wit,
 
 robbery
 
 and desiring to enter a plea of guilty to said charge, do hereby notify the District Attorney of Lackawanna County, to that effect, and request that
 
 *445
 
 lie enter a plea of guilty for me immediately.
 
 Adam Carwell.”
 
 Below which, the following appeared:
 

 “Now, October 26, 1929, above notice acceptéd and plea of guilty to the within indictment is accordingly entered.
 

 Harold A. Scragg
 

 District Attorney”
 

 The endorsement and plea were in accordance with the provisions of the Act of April 15, 1907, P. L. 62, and were substantially in the form suggested by the Supreme Court in
 
 Com. ex rel. Moore v. Ashe, Warden,
 
 341 Pa. 555, 19 A. 2d 734.
 

 Later in the same day, he appeared in open court, pleaded guilty and was sentenced by President Judge Newcomb to imprisonment in the Eastern State Penitentiary for a minimum of five years and a maximum of ten years, which was one-half of the maximum sentence that could have been imposed (Act of April 18, 1919, P. L. 61).
 

 The return of the warden shows that at the end of his minimum sentence, October 26, 1934, hé was released on parole, and while on parole, he was convicted in Luzerne County of carrying conceáled deadly weapons, and sentenced to the Luzerne County Prison for six months. He was released from said county prison on July 22, 1937, and returned to the penitentiary to serve the balance of his maximum term, (ten years) without commutation (in accordance with the Act of June 19, 1911, P. L. 1055, sec. 10, as amended by Act of June 22, 1931, P. L. 862), expiring July 22, 1942.
 

 In his petition for the writ of habeas corpus, the relator averred that he “was advised by the District Attorney to enter a plea of guilty in order that he
 
 *446
 
 might receive a light sentence......and that he was deceived and coerced by the District Attorney into the entry of said plea.”
 

 At the hearing before this court on January 15, 1942 —at which Harold A. Scragg, who was District Attorney of Lackawanna County at the time said plea was entered, was present in court — the relator told no such story. He testified that while in the county jail awaiting trial, “some gentleman, I am not certain who he was, ...... came down there and asked me whether I intended to plead guilty or not......and he said if I pleaded guilty he could promise that I would be given a light sentence, probably sent to Huntingdon. So I says in that case I thought I had better plead guilty. So he took my plea and I was taken in the court room.” He did not identify this ‘gentleman,’ or connect him with the district attorney’s staff, beyond a statement later on that after he was brought into court, the “prosecuting attorney approached me...... and says, ‘So you want to get out light,’ he says, ‘Well, you are lucky you did,’ he says, ‘You will get what you are after.’ So I was taken before the court. I pleaded guilty, as I intended to, and the Judge, upon hearing my plea, remarked that he thought Huntingdon would be the proper place to send me. So the prosecuting attorney arose......I don’t recall [his name]. So he addressed the court and says that in his opinion I was a hardened criminal and the Judge should make an example of out-of-town gangsters ...... So the Judge on reconsideration sentenced me to five to ten years in the Eastern State Penitentiary.”
 

 Mr. Scragg, who served as District Attorney of Lackawanna County for twelve years, testified that, to the best of his knowledge, he had never seen the relator before; that he had had no talk with him, nor had he made any promises to him before he pleaded guilty.
 
 *447
 
 The relator corroborated him, saying that he had never seen Mr. Scragg before. Mr. Scragg further testified that from the handwriting on the ‘indictment’ he was satisfied that the case had been in the charge of his assistant, Joseph B. Jenkins, who is dead; that it was his own practice, and that of his official staff, never to say or do anything to induce a prisoner to plead guilty, and that none of his assistants was authorized to make any such statement or promise as the relator had testified to, and if any of them had done so, he would have been discharged immediately, upon it coming to his knowledge. He testified to the practice in force, in such cases, during his incumbency of office: “Of course, your Honors, I have no personal recollection of the plea taken in this case, but during the twelve years that I was in that office, and prior to and since that time, this being a city police case, the city police would, at the request of the defendant, notify the district attorney’s office that the defendant wanted to enter a plea of guilty. He would be brought into court. Then the assistant district attorney, or perhaps the district attorney, as the case might be, would talk with the defendant in the district attorney’s office, or in the courtroom, and ask him if he understood the offense and if he wanted to enter a plea. If he did, he would be taken the first time to the district attorney’s office, then be taken before the Court. In this case it was Judge E. C. Newcomb
 
 [4]
 
 All I can say, without any recollection of this specific case, is that all of the judges there would always instruct the defendant as to the character of the crime to which he might be entering a plea, and then dispose of the case in accordance with the statement that might have been made, and probably was in this case, by the city policeman or by the detec
 
 *448
 
 tive, whoever may have been the prosecutor. But personally I would have no knowledge of this specific one, because we handled hundreds of them during that time.” This is in accord with the practice as stated in the return or answer filed by the present District Attorney.
 

 Our personal knowledge of Mr. Scragg and of his efficient services as district attorney convinces us that no such suggestion or promise, as related by the petitioner, was made to him by the District Attorney or any member of his staff; and we so find. And our knowledge of the high character of the Judges of the Courts of Lackawanna County satisfies us that the relator fully understood the nature of the offense to which he pleaded guilty. As before noted, he did not deny, either in his petition or at the hearing, that he had committed the robbery to which he had pleaded guilty.
 

 The relator’s present confinement in the penitentiary is due to his having committed a crime while released on parole. Had it not been for that, even the maximum of his sentence for robbery would long since have expired.
 

 No. 177. Petition of Joseph Handrahan. The rule is discharged and the petition refused.
 

 No. 181. Petition of Daniel De Bartolo. The rule is discharged and the petition refused.
 

 No. 176. Petition of Adam Carwell. The rule is discharged and the petition refused.
 

 [1]
 

 That at the time of his entering his plea of guilty, petitioner was not represented by counsel; that the court did not ask him if he desired counsel, nor offer to appoint counsel for him; and that he did not waive his right to have counsel represent him.
 

 [2]
 

 Carwell’s petition.
 

 [3]
 

 Handrahan’s and De' Bartolo’s petitions.
 

 [4]
 

 Judge Newcomb died February 10, 1935.