| 44 | 213 |
|----|-----|
| 111 | 349 |
| 44 | 213 |
| 127 | 625 |

[No. 3,119.]

# ANDREW HIMMELMANN v. MILO HOADLEY, AND SARAH E. HOADLEY, HIS WIFE.

POWER TO ESTABLISH GRADE OF STREETS IN CITY. — The power conferred on a Board of Supervisors to lay out, open, and grade streets in a city, carries with it, by necessary implication, the power to establish the grade of such streets.

CONFIRMATION OF VOID ORDER FIXING GRADE OF STREETS.—An order of a Board of Supervisors, establishing the location, width, and grade of streets, if passed without authority, is rendered valid by being subsequently confirmed by the Legislature.

AUTHENTICATION OF RECORDS OF STREET SUPERINTENDENT.—The proper mode for authenticating the record of the assessment, diagram, and warrant in cases of a tax on lots for improving or grading a street in San Francisco, is to append thereto the official certificate of the officer whose duty it is to make the record.   The assessment need not have a separate certificate.

IDEM.—Such certificate need not specify the pages upon which the assessment, diagram, and warrant are copied, but if it does, it will be limited to the pages specified, unless the record itself shows that the reference to the pages is a clerical error.

IDEM. — When such record is copied on to six pages, ending with page seventy-nine, and the certificate states that "the foregoing on pages No. 79 is a true and correct record of the assessment, diagram, and warrant," it is apparent that the omission of the five preceding pages was a mere clerical error.

CERTIFICATE OF DEPUTY IN NAME OF PRINCIPAL.—The certificate authenticating the record of the assessment, diagram, and warrant in case of tax on a street for improving the same in San Francisco, may be signed by a deputy of the Street Superintendent, in the name of his principal, and such deputy need not affix the word "deputy" to his signature if the certificate purports in the body of it to be the official signature of the principal.

JUDICIAL NOTICE OF OFFICIAL SIGNATURES. — Courts will take judicial notice of the officers of a county, and of the genuineness of their official signatures, and of the genuineness of the official signatures of such deputies as the law authorizes them to appoint.

DEMAND OF PAYMENT OF STREET ASSESSMENT.—In an action by a contractor to recover an assessment on a lot in San Francisco for improving the street, the return of an agent of the plaintiff, indorsed on the warrant for the collection of the assessment, showing a demand of payment of the assessment, is evidence of such demand.

IDEM.—The Superintendent of Streets in San Francisco, unless he is satisfied beyond all doubt as to the ownership of a lot, may assess it to "unknown owner" (and it is almost impossible to show that he did know the owner), and when the assessment is made to "unknown owner," payment of an assessment on it for improving the street .may be demanded publicly on the premises.

NEW TRIAL.—The appellant from an order denying a new trial cannot avail himself of an error appearing in the statement, unless he mentions it in his specifications of reasons why a new trial should be granted.

FRAUDULENT SIDE-CONTRACTS WITH OWNERS OF LOTS.—If the contractor to improve streets in San Francisco makes a private fraudulent contract with a part of the owners, it is no defense in an action brought by the contractor against another lot owner to recover his assessment. If such fraud is not discovered in time to appeal to the Board of Supervisors, relief can only be obtained by a direct attack on the contract.

APPEAL from the District Court of the Twelfth Judicial District, City and County of San Francisco.

On the 9th day of July, 1869, the Board of Supervisors of the City and County of San Francisco resolved to improve the sidewalks on California street, from Gough street to Cemetery Avenue, by macadamizing them. The contract was let to B. Kenny, on the 6th day of October, 1869, at six

cents per square foot. The work having been completed, the Superintendent of Public Streets, Highways, and Squares, on the 20th day of October, 1870, made an assessment to cover the sum due on the contract, and attached thereto a diagram exhibiting each street and crossing, lane, alley, place, and court, and showing the location of lots, and attached thereto a warrant authorizing said Kenny, his agents or assigns, to demand and receive the assessments. The warrant, assessment, and diagram were recorded in the office of said Superintendent, on pages 77, 78, 79. Upon the warrant was an indorsement, signed by F. Tobleman, the plaintiff's agent, dated the 28th day of October, 1870, stating that he had publicly demanded payment of the assessment sued for upon the lots assessed. The return was verified by the agent's oath. This return was recorded in the margin of the record. The assessment was assigned to the plaintiff. The delinquent lots were assessed to unknown owners.

This action was brought to recover an assessment on several lots, and it was alleged in the complaint that Milo Hoadley owned the lots, but the other defendants had some interest in them. The plaintiff introduced in evidence the assessment, diagram, warrant, and return thereon, together with the certificates of the recording of said assessment, diagram, warrant, and return indorsed on the back thereof. When they were offered in evidence defendant objected to the same, on the ground that the return thereon was defective, informal, and insufficient to create, when recorded, any lien upon any of the lots described in the complaint, or to authorize plaintiff to maintain this suit, as it did not show that the respective sums alleged to have been assessed to each of said lots was demanded *thereon*, nor of defendants personally, and that the assessment did not sufficiently refer to or designate any contract under which the work was done.

The Court overruled these objections. The plaintiff produced from the Street Superintendent's office volume No.

49, wherein said assessment, diagram, warrant, and return are copied at length in pages 77-77, 78-78, 79-79. When plaintiff offered in evidence said volume No. 49, to prove the record of said assessment, defendants objected to the same on the following grounds: That the signing and certificate to the alleged record of assessment on the face thereof applied to nothing else than what appears on those two pages marked and numbered 79, and did not include or apply to pages 77-77; and that the alleged record of said return does not purport to be signed by the Street Superintendent, but by J. Donnelly, who does not sign either as principal or deputy, so that the same is no record and creates no lien on defendants' said lots, or either of them, and is insufficient to authorize plaintiff to maintain this suit. The Court overruled said objections, and allowed the plaintiff to read in evidence pages 77-77, 78-78, 79-79, from said volume No. 49, to prove plaintiff's record and lien, to which ruling defendants excepted.

Here plaintiff rested, when the defendant moved the Court for a nonsuit, on the ground that no proof was offered of any of the preliminary proceedings of the Board of Supervisors, or Street Superintendent, beyond the recitals in said papers so introduced in evidence. The Court overruled the motion.

In rebuttal of the alleged return on said assessment, diagram, and warrant, and to maintain the issues on their part that no demand was ever made by plaintiff of the defendants personally, nor upon any of said lots of land, for the alleged assessments, defendants called F. Tobleman, who testified that he "is the same F. Tobleman named in the complaint as plaintiff's agent in making the demand and signing the returns therein named; that on the 28th day of October, 1870, he signed and verified the return upon the assessment in this case, already in evidence, after reading the same, said return having been written out for him by some one else, at the office of plaintiff's attorneys, but

by whom he does not know; that, at the same time, when he was making the demands mentioned in the return in this case, he also had in hand the assessment, warrant, and diagram for the grading of California street, from Gough street to Cemetery Avenue, and also the assessment, warrant, and diagram for macadamizing California street, from Gough street to Cemetery Avenue." There were one hundred and ninety-six lots in all, and three assessments on each lot.

The witness said "he did not make all the demands therein mentioned on the 28th of October, but he made said demands on two different days, but what date he does not recollect, and was engaged at the lots in making said demands in all about four hours, of each said two days; that he started from the city about nine o'clock in the morning, and went out along California street—the first day along one side, and the next day on the other side of the street, making his demands; that he came into town for lunch each time at midday, which took him about an hour, and each time he quit about three P. M. or after, and returned in the afternoon, getting back to his office before four o'clock P. M. each time; that he went and came on horseback; that when the lot on which the demand was to be made was fenced in, he hitched his horse, got over the fence, produced his bills, which he had with him—all made out for each lot, respectively—made the demand, and then proceeded to the next lot; that he had with him three assessment lists, and three sets of bills; that when there happened to be a house on the lot, of which demand was to be made, he rang or rapped at the door, waited until somebody came to the door, and he found out who owned the property, then made his demand, and left; generally left the bill at the house; on California street, between Baker and Broderick streets, there are houses on every two or three lots; that most of the lots were unimproved, and without houses."

The witness further testified: "At the time I made the demand, there were seven houses on the north side of California street, between Gough street and Cemetery Avenue, and on the south side about ten; I think most of the lots were without houses, and are barren sand hills; I spoke to the lot in each case in making the demand, and not to any person, except at the houses, unless there was some person on the lot; in demanding on the lot, unless there was some person on the lot, I did not speak in a loud tone of voice, not so loud as I am speaking now;" (in a low tone, barely audible to the Judge and Reporter.)

In reference to these lots, the witness says, in making the demand on such lots, he ascertained their boundaries, with the help of the diagram, which he had with him, and by reference to the lines of the cross streets and pacing the distances he was enabled to guess pretty accurately just where the boundaries of the lots were, and he made the demand accordingly.

Witness further testified that he did not see or make demand of defendant Hoadley personally, when he was out making his demands on the land; but some time after making his return, and a short time prior to the commencement of this suit, he went to the office of the defendant, Milo Hoadley, and delivered to him a number of bills for the various assessments in this suit, and bills for grading and macadamizing this part of California street, but said nothing—only handed to and left with him said bills, and left. The witness being asked to explain the difference between his testimony here, that he made the demands on two different days, and the statement in the returns, that he made the demands all on the twenty-eighth day of October, says: "I done it up to that day. I closed it on that day; that was the last day. I did not make all the demands on the twenty-eighth, but some on the day before, I suppose.

I don't recollect. I am sure I was not more than two days about it."

No appeal was taken from the assessment to the Board of Supervisors.

Prior to the passage of the resolution to do the work, Kenny, the contractor, and the owners of certain lots on California street, entered into the following contract, the fulfillment of which was guaranteed by the plaintiff:

"Agreement between B. Kenny, contractor, and the undersigned property-holders on the line of California street, between Gough street and Cemetery Avenue, in the matter of grading, sidewalking, curbing, and macadamizing said California street and its crossings:

"In consideration of the sums hereinafter mentioned to be paid and assistance rendered, the said Kenny engages to obtain the city contract for grading, sidewalking, curbing, and macadamizing said California street and its crossings, from Gough street to Cemetery Avenue, complete. Customary macadam, to be not less than one foot deep between curbs and six inches on the sidewalks; curbing and all work to be accepted by the Superintendent of Streets, and to be finished and completed on or before June 1st, 1868, next.

"And the parties of the second part, each for himself and not jointly, agree, for such work done in front of his premises, to pay said B. Kenny or his assigns at the rate of three dollars and thirty cents per lineal front foot on California street, such rate to include all charges for street crossings; separate payments to be made, seventy-five (75) per cent on completion of all work fronting each individual entire property, and balance, twenty-five per cent, on completion and acceptance of proposed street improvements. This contract to be binding on all parties, and in full satisfaction of and

guarantee on part of said Kenny against any official contract made or to be made for said work.

"Dated San Francisco, this October 18th, 1867.

      "Signed,         B. KENNY.

      "Signed,         FRED. BILLINGS,

"Blocks 196 and 313 W. A. by attorney, D. B. Northrop.

           "P. SATHER,

"Block No. 161 and 50-vara lot in Block No. 160 (southeasterly corner).

           "J. S. HUTCHINSON,

              "100-vara in Block 271.

           "JOSEPH RINGOT,

               "Lots Nos. 1, 2, and 3, in Block 461.

                  "P. H. BLAKE,

                     "108¾ feet in Block 353."

The plaintiff recovered judgment, and the defendants appealed.

The other facts are stated in the opinion.

*Porter, Holladay & Weeks,* for Appellants.

Order No. 684 was approved January 26th, 1866, adopting the map of grades as reported by the Board of Engineers. Plaintiff practically concedes the insufficiency of Order No. 684 to confirm said surveys of the Board of City Engineers as to any part of the streets outside the charter line of 1851; but he insists that the whole order was confirmed by the Act of March 8th, 1866, entitled " An Act to ratify and confirm certain ordinances," etc. (See Stats. 1865–6, p. 166.) But, in reply, we submit that this Act of March 8th, 1866, does not confirm or establish the grade beyond the limits of 1851, for the following reasons:

First—The Act does not, in terms, refer to or include Order No. 684.

Second—Order No. 684 does not profess to act upon any

work, except such as was authorized and provided for by the Acts of 1862 and 1864, and the ratification does not enlarge the terms of the order itself, and we have already seen that those Acts are expressly limited to territory within the charter limits of 1851.

There was no proof of any valid record of the alleged assessments affecting the lots described in the complaint. The purpose of this action is to enforce a supposed lien. The lien or no lien depends on the performance of certain acts and making a careful record thereof. When the warrant, assessment, diagram, and return are recorded, the amounts assessed become a lien on the land for two years from the date of recording. (Secs. 10 and 11.) The record of the assessment shall be signed by the Superintendent, and when so signed, "shall have the same force and effect as other public records." (Sec. 19.) The certificate of the Superintendent to the record is limited to page seventy-nine. It does not cover pages seventy-seven and seventy-eight.

It was error in the Court refusing defendants' motion for a nonsuit.

Plaintiff conceives that no other proof is necessary than the production of the assessment roll and record, and, in support of this view, he relies on section twelve of the street law, as amended April 25th, 1863, which says: "The said warrant, assessment, and diagram shall be held prima facie evidence of the regularity and correctness of the assessment, and of the prior proceedings and acts of the said Superintendent, and of the regularity of all the acts and proceedings of the Board of Supervisors upon which said assessment and diagram are based."

The assessment proves itself. Plaintiff is not required to go into a calculation to prove that the assessment estimates and figures are correct. It has been held, repeatedly, that the resolution of intention to do street work is the first and jurisdictional step in the proceeding. Then follows the

order to do the work; then awarding the contract by the Board to the accepted bidder; then the Street Superintendent, pursuant to these orders, executes the contract with the contractor.

The question now presented is this: Is the plaintiff excused from producing and proving the existence of those preliminary and jurisdictional steps in the proceeding? When the orders are produced and shown to exist, then their correctness and regularity are evidenced by the warrant and assessment, but the statute does not profess to make the warrant, etc., evidence of orders and resolutions approved by the Mayor.

Witness Tobleman's testimony was in conflict with his return. He says he made the demand in two days, and his return says one. The witness must have been expeditious to an incredible degree to make all these demands in the portions of two days, in which, he says, he was about it. "There are one hundred and ninety-six lots in all, and three assessments on each lot." This makes five hundred and eighty-eight demands he must have made in eight hours, if we allow two hours of each day for lunch and time to go and come; seventy-three demands in an hour, at that rate, or more than one per minute.

The case shows that Kenny and another got the award of the work on this street from the city, at the rate of seven dollars per front foot, while Kenny contracts with a few of the owners to do the same work for three dollars and thirty cents per foot.

In the case of *Nolan* v. *Reese*, 32 Cal. 484, the Court held that such proceeding on the part of the contractor was a fraud on the law and on the parties, but that they should have sought redress on appeal to the Board of Supervisors. In our case, such relief was impossible, as we did not know of it till after this suit was commenced. Plaintiff seems to have coöperated with contractor Kenny, his assignor in this

scheme, to get the work awarded to them on their own terms, in spite of opposition, and without competitors.

*M. A. Edmonds,* for Respondent.

The Board of Supervisors have power to order the grading or other improvement of a street, whenever it was laid out and opened. (Stats. 1862, p. 391, Secs. 1, 2, 3; see, also, Stats. 1856, p. 165, Sec. 74, Sub. 4.) The Act of 1856 is the Consolidation Act; and that of 1862 is substituted for Article IV of the Consolidation Act. The several provisions above cited relate to the same subject matter, and are to be read together, as parts of the same Act. Section one (Stats. 1862, p. 391) declares all the streets upon the "Van Ness map," and all other streets "now dedicated to public use, or which shall be hereafter dedicated to public use, lying between the Bay of San Francisco and Johnson and Larkin streets, * * * to be open, public streets, etc., for the purposes of this law." The same section authorizes the Board of Supervisors "to employ the City and County Surveyor to ascertain and establish the lines and width of all or any of said streets, etc., whenever they shall deem it necessary so to do." Section two provides that "the Board of Supervisors shall have power to lay out and open new streets within the corporate limits of the City and County of San Francisco, and west of Larkin and southwest of Johnson street;" * * * "and when so laid out and opened, the provisions of this Act shall be applicable thereto." Section three empowers the Board "to order the whole or any portion of the said streets, etc., graded or regraded to the official grade, * * * and to order any other work to be done which shall be necessary," etc.

The power to grade the streets of a city includes the necessary power of establishing their grades. So does the authority to open and lay out, to "regrade," and "keep in repair." (*Smith* v. *Washington,* 20 How. U. S. 148; *Waddell*

v. *The Mayor, etc.,* 8 Barb. N. Y. 95, 97; *Callender* v. *Marsh,* 1 Pick. 418; *Graves* v. *Otis,* 2 Hill, 466; *Goszler* v. *George-town,* 6 Wheat. 592; *Macy* v. *Indianapolis,* 17 Ind. 269.) The Legislature had power to establish the grade of a street by a confirmatory Act.

The motion for a nonsuit was properly overruled, unless the statute is to be disregarded, which makes the assessment, diagram, warrant, and return prima facie evidence of the plaintiff's right of recovery. (Stats. 1862, p. 399, Sec. 13.) The rule of pleading upon which counsel relies was established in *Himmelmann* v. *Danos,* 35 Cal. 448, 449. But that case expressly recognizes the statutory rule of evidence, and draws the distinction, which counsel profess not to perceive, between the rule of evidence and the rule of pleading.

By the Court, Rhodes, J.:

The statute of 1862, amendatory of the "Consolidation Act" (Stats. 1862, p. 391), empowers the Board of Supervisors to lay out and open new streets within the corporate limits of the city and county, and west of Larkin and southwest of Johnson streets; and to order such streets to be graded or regraded to the official grade. The power to lay out, open, and grade streets carries with it, by necessary implication, the power to establish the grade of such streets, unless the power be expressly reserved, or granted to another body or officer.

Order No. 681, passed by the Supervisors January 30th, 1866, purported to establish the location, width, and grade of streets over that part of the city which includes the premises in controversy. This order was confirmed by the Act of March 8th, 1866 (Stats. 1866, p. 166), and thus the action of the Board, if not authorized by the general power to lay out, open, and grade streets, was rendered valid.

The record of the assessment, diagram, and warrant which

was introduced in evidence, covered six pages of the volume in the Street Superintendent's office; and to the record was appended the certificate of the Superintendent that "the foregoing, on pages No. 79, is a true and correct record of the assessment, diagram, and warrant issued this the 20th day of October, A. D. 1870." Following this is the return of the plaintiff's agent, showing the nature and character of the demand for the payment of the assessments; and to this is appended the following certificate: "Recorded this 28th day of October, A. D. 1870. M. C. Smith, Superintendent of Public Streets, Highways, and Squares, per J. Donnelly."

It is claimed by the defendant that the record is defective in two particulars. In *Himmelmann* v. *Danos*, 35 Cal. p. 441, the question whether the record of the assessment should be separately signed was reserved. The usual and, in our opinion, proper mode for the authentication of such a record, is by appending the official certificate of the officer whose duty it is to make the record. He need not specify in his certificate the pages of the record upon which the assessment, etc., are copied; but when he does certify in that form, the certificate will be limited to the pages specified, unless the record itself shows that the reference to the pages is a clerical error. It is apparent, we think, that the omission of the numbers of the five preceding pages was a mere clerical error, and that such error was not calculated to mislead a person owning or dealing with a lot mentioned in the assessment.

The second objection is that the certificate appended to the record of the return is not signed by the Superintendent. It is provided in section twenty-two of the Act concerning streets in San Francisco, that the Superintendent "shall be allowed, at the discretion of the Supervisors, not less than three, and not more than six deputies, to be by him ap-

pointed from time to time. * * * It shall be lawful for the said deputies to perform all or any of the duties conferred by this Act upon the Superintendent of Streets and Highways, under the direction of the said Superintendent, except the acceptance or approval of work done.'' The objection is not that the certificate might not well be made by a deputy, but it is, that it does not purport to have been made by a deputy, that Donnelly is not described as a deputy in the certificate. The Courts will take judicial notice of the officers of a county and the genuineness of their signatures; and when the law provides for the appointment of a deputy by one of those officers, Courts will also judicially recognize such deputy and the genuineness of his signature. The deputies of Clerks, Sheriffs, Recorders, and other ministerial officers are constantly discharging official duties in the names of their respective principals, and the Courts are every day taking judicial cognizance of the capacity of the persons by whom those acts are performed. The certificate in this case purports to be the official certificate of the Superintendent; and the question is therefore reduced to the inquiry whether the Court will take judicial notice of the signature of a deputy when he omits to add to his signature the words ''Deputy Superintendent,'' or words of equivalent import. The word ''Superintendent'' forms no part of the signature of that officer, and is only necessary when the body of the certificate fails to show that it was intended to be official; and we are of the opinion that it is unnecessary for the Deputy Superintendent to append to his signature to an official certificate, made in the name of his principal, the word ''Deputy,'' or words of equivalent signification. The word ''Deputy'' is no part of his signature; and as the certificate bears an official stamp, and as the Court will take notice that Donnelly was a Deputy Seperintendent, and that his signature is genuine, the certificate will be regarded as sufficient.

The return of the plaintiff's agent, indorsed on the warrant, is evidence of the demand of payment of the assessment. The testimony of the plaintiff's agent, in some slight degree, sustains the return; and, although in some respects it appears scarcely credible, yet that matter is for the Court below. According to the repeated construction of the provisions of the statute, the Superintendent, unless he is satisfied beyond all doubt as to the ownership of a lot, may assess it to "unknown" owner; and it is almost, if not quite, impossible to show that he did know the owner. When the assessment is made to an unknown owner—and all have been made in that form, so far as we are aware, since the decision in *Smith v. Davis*, 30 Cal. 536—the contractor is only required to "publicly demand payment on the premises assessed." The owner of a lot may insist that every provision of the statute having the semblance of benefit to him shall be strictly observed; but how it can be of the least shadow of benefit to him, to have the contractor walk over a tier of unoccupied lots, and demand on each the payment of the assessment, it is impossible to imagine. But, however useless or absurd such a demand may be, there was evidence tending to show a compliance with the statute.

The point, that the fraudulent side agreement entered into between the contractor and a part of the lot owners, rendered the contract between contractor and the city illegal and void, cannot be entertained, because it is not comprehended within any of the specifications in the statement on the motion for a new trial. And, it may be added, that *Nolan v. Reese*, 32 Cal. 484, is decisive of the point adversely to the defendants. If the fact, that the defendants had no knowledge of the fraudulent agreement, until the time for an appeal to the Board had elapsed, entitles them to any relief, as the statute now stands, they could avail themselves of it only in a direct attack on the contract.

It is apparent that the statute might readily be framed so as to afford adequate remedies, which would reach both parties to those fraudulent contracts, and thus secure a greater degree of fairness and honesty in the administration of the street laws.

Judgment affirmed.