[Crim. No. 6970.   First Dist., Div. One.   July 29, 1968.]

In re STEVEN D. PFEIFFER on Habeas Corpus.

Walter J. Robinson II, under appointment by the Court of Appeal, for Petitioner.

Thomas C. Lynch, Attorney General, Derald E. Granberg and Don Jacobson, Deputy Attorneys General, for Respondent.

ELKINGTON, J.—Steven Pfeiffer, a state prison inmate, has petitioned this court for a writ of habeas corpus.

Pfeiffer reached his 17th birthday July 11, 1958. Three weeks later he, with Howard Reagan, also 17 years old, and Edward Murphy, 18 years of age, commited an armed robbery of a motel in Merced County. They were thereafter arrested for that crime. At the time of the robbery and arrest Pfeiffer and Reagan were parolees from the California Youth Authority, to which each had been committed as an "incorrigible." They were referred to the juvenile court where they did not waive, and were not represented by, counsel. The juvenile court found Pfeiffer and Reagan to be unfit for consideration under the procedure of that court and waived jurisdiction over them. They were accordingly remanded for prosecution under the general criminal law. In the superior court each of the three defendants pleaded guilty to first degree robbery and was sentenced to the state prison for an indeterminate period of from five years to life. (See Pen. Code, §§ 211, 211a, 213.)

On December 29, 1963, Pfeiffer, without force or violence, escaped from a facility of the Department of Corrections in San Bernardino County. Six days later he perpetrated an armed robbery of a service station in Los Angeles, taking around $100. He then went to New York City, where he was

steadily employed until January 1965. He next traveled to Peru, where he became a teacher for the North American-Peruvian Cultural Institute. In Peru he married a girl who has borne him a child.

In December of 1965, Pfeiffer, having been traced to Peru, was arrested and returned to the United States. In Los Angeles he was charged with, and pleaded guilty to, the robbery which followed his escape. Because of his earlier 1958 robbery conviction Pfeiffer appeared ineligible for consideration for probation. On his arraignment for judgment the court stated the following:

"Mr. Pfeiffer, it is unfortunate that I am not in a position to grant probation, because the probation report reflects that during the period of time during which you have been an escapee, you have become rehabilitated. Since your escape occurred in another county, this county has no control over the matter; and even if there were there would be serious questions of public policy whether it could be overlooked. But I am not going to make a finding on the priors because I want the Adult Authority to have a free hand in fixing the total of your sentence. . . . It will be the judgment of the Court that the defendant shall be sentenced to the State Prison for the term prescribed by law. Defendant is remanded to the custody of the Sheriff of Los Angeles County for delivery to the Director of Corrections at the Reception Center at Chino, California. This sentence shall run concurrently with the sentence to which the defendant is subject by reason of his prior conviction for robbery for which he was sentenced on April 30, 1962 [sic]. That's about all I can do for you, sir. Good luck to you."

Pfeiffer was then taken to San Bernardino County where he was charged with escape from a state prison. (Pen. Code, § 4530, subd. (b).) He pleaded guilty to that charge. Again he appeared to be ineligible for probation because of the 1958 robbery. In a report of the probation officer we find the following comment: "Mr. Pfeiffer was seemingly able to rehabilitate himself to a certain degree after his escape. This is indicated by his establishing of a stable life in Peru and discarding his negative behavior patterns. It would appear that he has adequately demonstrated his ability to be a productive, responsible citizen. [ ¶ ] In view of the defendant's demonstrated ability to become rehabilitated, this officer believes a certain amount of consideration by the court is warranted. Mr. Pfeiffer is returning to State Prison as an escapee with a

subsequent offense. It would seem that the Adult Authority will take this into consideration as well as Mr. Pfeiffer's apparent rehabilitation when he applies for parole. A concurrent sentence would give the Parole Board maximum leeway in establishing a parole date. This officer strongly feels that such a sentence in this case is warranted and justified.'' Pfeiffer was then sentenced to state prison for the escape.

In July 1965, Howard Reagan, Pfeiffer's accomplice in the 1958 Merced County robbery, petitioned the United States District Court for a writ of habeas corpus. He contended that he was not afforded the right to counsel guaranteed by the Sixth and Fourteenth Amendments of the United States Constitution in the Merced County proceedings. A hearing was held in which the State of California was represented by its Attorney General.

The evidence at Reagan's hearing, among other things, disclosed the following. At the juvenile court proceedings, including the point at which that court waived its jurisdiction and remanded defendants for prosecution under the general criminal law, defendants were not represented by counsel.[1] There had been no waiver of counsel. Upon their remand to the superior court for criminal prosecution an attorney was appointed to represent them. It was indicated that counsel held no interview with any defendant, at least prior to the day set for the preliminary examination. On that day preliminary examination was waived and the defendants were held for trial before the superior court. Still represented by the same attorney, they were arraigned before the superior court on September 15, 1958. The reading of the information was waived and each of the defendants pleaded guilty to the charge of robbery. The court announced, ''Let the matter be referred to the Probation Officer for report and recommendation, returnable October 3, 1958.''[2] Counsel then indicated

---

[1]*Kent* v. *United States*, 383 U.S. 541 [16 L.Ed.2d 84, 86 S.Ct. 1045], indicates that they were thus denied rights of constitutional concern. That case states (p. 556 [16 L.Ed.2d at p. 94]) : ''It is clear beyond dispute that the waiver of jurisdiction [by the juvenile court] is a 'critically important' action'' determining important statutory and constitutional rights of the juvenile. See also *Black* v. *United States*, 355 F.2d 104, 106 [122 App.D.C. 393], which states: ''The need [of counsel] is even greater in the adjudication of waiver since it contemplates the imposition of criminal sanctions.''

[2]Penal Code section 1203 provided:

'' [*I*]*n every felony case in which the defendant is eligible for probation,* before any judgment is pronounced, and whether or not an application for probation has been made, the court must immediately refer the matter to the probation officer to investigate and to report to the court,

his inability to be present on that day because of a Bar Association meeting. The court stated, "I want the probation officer's report." Counsel, asked if he knew "any of the background of this case" in which the probation officer would be interested, answered "No, I do not." The defendants then expressed a desire to "waive this and get our sentence now.": Counsel thereupon pointed out to the court "the offense alleged is armed robbery with a deadly weapon." Asked by the court, "There is no chance for probation?" he replied, "No, there is not." A moment later the court stated to the prisoners, "Under the offense [with] which you have been charged here, there is no chance for probation." Counsel made no response, apparently believing, as did the court, that the defendants were ineligible for probation as a matter of law. In fact, each of the defendants was eligible for probation.[3] Moreover, each of the defendants was eligible for commitment to the California Youth Authority. The court then accepted the waiver by each defendant of a probation officer's report and of the statutory delay for imposition of sentence. (Pen. Code, § 1191.) The court thereupon indicated an intent to sentence each defendant to state prison. Counsel made no effort to secure lesser penalties, and when asked, "Is there any legal cause appearing why sentence should not be pronounced?" replied, "None of which I have any knowledge." Each of the defendants was thereupon sentenced to state prison.

Following the sentencing of the defendants, defense counsel stated that he had just examined his records and that he believed it should be called to the court's attention that "Two of them are 17 years of age at the present time." The following then occurred: "THE COURT: All right. I think sending them to the California Medical Facility,[4] which is an adjunct

at a specified time, upon the circumstances surrounding the crime and concerning the defendant and his prior record, which may be taken into consideration either in aggravation or mitigation of punishment. . . . [¶] *In those cases in which the defendant is not eligible for probation,* the judge may in his discretion refer the matter to the probation officer for an investigation of the facts relevant to sentence. The probation officer must thereupon make an investigation of circumstances surrounding the crime and the prior record and history of the defendant and make a written report to the court of the facts found upon such investigation." (Italics added.)

[3]The year before, 1957, Penal Code section 1203 was amended to allow probation on such a conviction if the court found it to be an unusual case "where the interest of justice demands a departure from the declared policy."

[4]The Medical Facility is an institution of the California state prison system under the jurisdiction of the Department of Corrections. (Pen. Code, § 6100.) It has been designated by the department as one of the places for the reception of persons sentenced to state prison.

of the State Penal System, it has the authority and the right to transfer them to any place of incarceration [*sic*]. Is that correct, Mr. [Probation Officer]? [PROBATION OFFICER]: That is correct. THE COURT: It works both ways, the Youth Authority can send them to San Quentin, and San Quentin can send them to Youth Authority. That will be the order of the court. That is all.'' Counsel remained silent, although regardless of such custodial transfers, the defendants' prison sentences would be for a maximum term of life (Pen. Code, § 213) while on commitment to the Youth Authority they would ordinarily be discharged not later than at age 25. (Welf. & Inst. Code, §§ 1771, 1780.) The entire proceedings from arraignment through sentence took but a few minutes.

The district court concluded that the representation afforded Reagan *throughout* the 1958 proceedings was ''constitutionally inadequate.''[5] It adjudged Reagan's imprisonment to be unlawful and ordered him discharged from custody. On appeal from that decision the United States Court of Appeals affirmed, stating: ''Since appellee did not have adequate representation in the state court proceeding, it is quite clear that his conviction and sentence did not meet the requirements of the federal constitution. [Citation.] [ ¶ ] The District Court ordered that appellee be discharged from custody. In the usual case of the granting of such petitions, the order has been conditional, directing discharge unless, within a specified or a reasonable time, appropriate state authorities afford to the state prisoner an opportunity to replead with constitutional irregularities corrected. In this case, however, the appellee, at age 17, enjoyed California legal rights which were incident to his youth. These rights have gone with the passage of time and are irretrievable. Under these circumstances, the District Court made the proper disposition, and its order is Affirmed.'' (*Wilson* v. *Reagan,* 354 F.2d 45, 46.) The district court's adjudication is now final. Its effect is to render Reagan immune from further prosecution on the charge under the state law.

One of Pfeiffer's contentions in the instant proceeding is that his legal representation at the time of his 1958 Merced County plea and sentence was also ''constitutionally inadequate.'' His petition is based upon substantially the

---

[5]Among other things, the district court found that Reagan had not been properly advised as to the consequences of his guilty plea, and that counsel had not adequately researched the applicable law, knew nothing of Reagan's background, and had not investigated the facts.

same facts as were found to be true in Reagan's habeas corpus proceedings. The Attorney General concedes that the two cases are within a "similar factual context," and that the relief sought in each case is based upon "substantially the same grounds (inadequate representation)."

It thus appears that the 1958 Merced County proceedings and the remarks and acts of the courts and the conduct of counsel related to and affected Reagan and Pfeiffer in substantially the same manner. We therefore conclude that Pfeiffer's 1958 conviction must be set aside on the ground that throughout the proceedings his representation was constitutionally inadequate.

It follows that at the time of Pfeiffer's later convictions in Los Angeles County and San Bernardino County, he had not previously been convicted of a felony, and therefore was eligible for probation under Penal Code section 1203. It is pointed out that at the time of the San Bernardino County conviction Pfeiffer had in fact, a short time before, been convicted of the Los Angeles County robbery. Nevertheless, within the meaning of Penal Code section 1203 he had not "been previously convicted of a felony." This language of the section has reference to the time of the commission of the offense on which probation is sought and not to the time when the court is passing upon the application for probation. (*People v. Superior Court,* 208 Cal. 688 [284 P. 449].)

We have considered the remaining contentions made by Pfeiffer in his petition. As to those contentions we find no merit.

We are charged by law to dispose of this proceeding as the justice of the case may require. (Pen. Code, § 1484.)

Pfeiffer was denied his right to counsel during his summary juvenile court proceedings. Throughout the criminal proceedings his court-appointed representation was constitutionally inadequate. Ten years have now elapsed. If remanded to the superior court for correction of constitutional irregularities, since the charged offense was committed before he was 18 years old, he must necessarily again be referred to the juvenile court.[6] (Welf. & Inst. Code, § 603.) Proceedings would there be taken to determine if Pfeiffer, now 27 years of age, is "a fit subject for consideration under the Juvenile

[6]Although the application of *Kent* v. *United States,* 383 U.S. 541 [16 L.Ed.2d 84, 86 S.Ct. 1045], is not retroactive as to judgments of conviction becoming final before May 15, 1967 (*In re Harris,* 67 Cal.2d 876 [64 Cal.Rptr. 319, 434 P.2d 615]), here by virtue of this decision there is no such final judgment.

Court Law." (Welf. & Inst. Code, § 604.) Such proceedings would now be a hollow ceremony leading to an obvious conclusion. Upon his return to the superior court his constitutional and statutory rights to a speedy trial on the 1958 offense are irrevocably denied him. If witnesses have any recall of the pertinent events, their reliability would be subject to question. If convicted, what had been Pfeiffer's right to have the court consider his commitment to the Youth Authority is now gone. Any attempt in either court to reconstruct conditions, or judicial consideration or intent, as they were in 1958, would be fruitless; the judges of both courts are now dead, and the attorney who represented Pfeiffer in the criminal courts has neither recollection nor records of the case. And on his void 1958 conviction Pfeiffer has already served time equal to the total term of many first degree robbery convictions. This state of affairs has been brought about, not through any fault of Pfeiffer, but by a withholding from him of guaranteed rights.

Ordinarily as indicated in *Wilson* v. *Reagan, supra,* 354 F.2d 45, the proper procedure would be to return Pfeiffer to Merced County for constitutionally proper plea and proceedings. But here the circumstances are extreme and unusual. We believe it would not be in the interest of justice that the 1958 proceedings be reprosecuted at this late day. Doing so would offend the concept of "absolute fairness" which must attend the criminal judicial process. (See *Estes* v. *Texas,* 381 U.S. 532, 539 [14 L.Ed.2d 543, 548, 85 S.Ct. 1628].)

Accordingly, Pfeiffer's 1958 indictment for robbery must be dismissed.

■ Contrary to the strong insistence of the Attorney General, we find substantial authority for such a disposition under a gross factual situation such as that confronting us. Penal Code section 1385 provides that the court may "in furtherance of justice" order a criminal action to be dismissed. "Furtherance of justice" as used in that section requires consideration of the "constitutional rights of the defendant and the interests of society." (*People* v. *Disperati,* 11 Cal.App. 469, 476 [105 P. 617] ; see also *People* v. *Winters,* 171 Cal.App.2d Supp. 876, 877 [342 P.2d 538].) ■ Courts are empowered to fashion a remedy for deprivation of a constitutional right "to suit the needs of the case." (*LaFaver* v. *Turner,* 345 F.2d 519, 520.)

The decision in *Wilson* v. *Reagan, supra,* 354 F.2d 45, de-

nied to California the right to reprosecute Reagan on the same charge here lodged against Pfeiffer. In *Aderhold* v. *O'Neill*, 66 F.2d 85, O'Neill's sentence was determined void. The court stated: "It is contended by the United States that instead of being discharged O'Neill should have been remanded to the Northern District of New York for a new sentence. Of course, that action might have been taken, but it is not mandatory that a court entertaining an application for a writ of habeas corpus should do so. The judge is vested with discretion and may dispose of the prisoner as will best serve the interests of justice. [Citation.] As appears from the order, the District Court found that O'Neill had then only 74 more days to serve, after deducting allowance earned for good conduct. There does not appear to be any abuse of discretion in this case." In *Powell* v. *Wiman*, 287 F.2d 275, it was determined that Powell's trial, more than five years earlier, was "attended by such fundamental unfairness as to amount to a denial of due process of law." (P. 281.) The court did not remand for a properly conducted trial. Instead it stated (p. 282): "Powell has now been imprisoned for more than five years. With good time and other allowances, his sentence will probably expire within less than another year. The Court's duty upon a habeas corpus hearing is to 'dispose of the matter as law and justice require.' 28 U.S.C.A. § 2243; cf. 28 U.S.C.A. § 2106. From the present record, without more, it would appear that Powell's discharge will best serve the ends of justice."

Pennsylvania's highest court, in *Commonwealth* ex rel. *Schultz* v. *Smith*, 139 Pa.Super. 357 [11 A.2d 656], on habeas corpus, found fundamental error in the denial of counsel to petitioner at his trial many years before. After commenting on the usual practice of remanding for proper proceedings, the court said (p. 662): "In this case, however, the relator has served nearly nine years' imprisonment, a very substantial part of the sentence imposed upon him. To try him again at this time, after this lapse of years, would probably be most unfair. There are other circumstances averred in the petition and not denied in the answer which confirm us in this view. [¶] We are of opinion, therefore, that in the circumstances here present the petitioner is entitled to his discharge. [¶] It is so ordered."

*Reid* v. *Sanford*, 42 F.Supp. 300, also concerned a successful habeas corpus proceeding based on a denial of counsel at petitioner's criminal trial. There was no remand. The court

stated (pp. 303-304) : ". . . I find that petitioner's detention is unlawful, and it remains only for the Court to determine how to 'dispose of the party as law and justice require.' [¶] The record shows that petitioner has earned all statutory good time and also extra good time. It also shows, as already stated, that petitioner was confined in jail for nearly two and one-half years while the prosecution of his appeal was delayed through failure to appoint counsel. If these periods of time be considered, he has, regardless of the validity or invalidity of the sentences, already served about all that would be required on a valid thirty-year sentence. [¶] I am of opinion, therefore, that 'law and justice require' his discharge." The habeas corpus petitioner in *Hepburn* v. *Chapman*, 109 Fla. 133 [149 So. 196], established that he had been sentenced to three years for a crime, the maximum penalty for which was one year. The Florida Supreme Court stated (p. 203) : "It appears from the return that the petitioner was, on July 15, 1932, sentenced to imprisonment in the state penitentiary for a period of three years. It appearing that the petitioner has already been imprisoned for more than eleven months in the state penitentiary, and that the maximum term to which he could lawfully have been sentenced was and is only twelve months in the county jail, no good purpose would be subserved by remanding the petitioner to the trial court for the imposition of a new and valid sentence, . . ."

It is pointed out that in *Kent* v. *United States, supra,* 383 U.S. 541, where a juvenile was denied counsel at the juvenile court "waiver of jurisdiction" proceedings, the Supreme Court rejected the suggestion that Kent's conviction be vacated and his indictment dismissed. In that case it is made clear that such ruling was made because of "the circumstances of this case." (P. 564[16 L.Ed.2d at p. 99].) A stated circumstance there was that Kent was undergoing treatment at a hospital where he was "suffering from mental disease . . . , Schizophrenic Reaction, Chronic Undifferentiated Type,' that he had been suffering from . . . at the time of the charged offenses [rape]." (P. 549, fn. 8 [16 L.Ed.2d at p. 91].) The cause was remanded to the district court to enter "an appropriate judgment." (P. 565 [16 L.Ed.2d at p. 99].) Courts will rarely, on habeas corpus, grant an insane person his unconditional release. (See *Miller* v. *Blalock,* 356 F.2d 273, 276; *Overholser* v. *DeMarcos,* 149 F.2d 23, 24 [80 App. D.C. 91] ; *Dorsey* v. *Gill,* 148 F.2d 857, 865 [80 App.D.C. 9] ; *Ex Parte DeMarcos,* 65 F.Supp. 231, 232; *State* ex rel. *Sulli-*

*van* v. *Cocke,* 167 Tenn. 253 [68 S.W.2d 933, 934].)

The writ of habeas corpus is granted.

It is ordered and adjudged:

1. That petitioner Steven Pfeiffer's plea of guilty in Merced County Superior Court, action number 4822, is set aside; that as to him the conviction and judgment therein are void, *ab initio*; and that the said court is directed, pursuant to Penal Code section 1385, forthwith to dismiss the said action in furtherance of justice.

2. That at the time of pronouncement of judgment against petitioner in Los Angeles County Superior Court action number 323535 (1966) and in San Bernardino County Superior Court action number Cr. 20155 (1966) he had not suffered the purported 1958 Merced County conviction, and therefore was eligible for probation under Penal Code section 1203.

3. That the Los Angeles County (No. 323535) and San Bernardino County (No. Cr. 20155) judgments against petitioner are set aside; and that petitioner is remanded to the superior courts of such counties for further proceedings based on his pleas of guilty.

Molinari, P. J., and Sims, J., concurred.