[Crim. No. 17498. In Bank. July 26, 1974.]

THE PEOPLE, Plaintiff and Respondent, v.
DOUGLAS LAMAR RHODES, Defendant and Appellant.

**COUNSEL**

John F. Bowman, under appointment by the Supreme Court, for Defendant and Appellant.

Evelle J. Younger, Attorney General, Edward A. Hinz, Jr., Chief Assistant Attorney General, William E. James, Assistant Attorney General, Roger E. Venturi and W. Scott Thorpe, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**WRIGHT, C. J.—** ██ Defendant Douglas Lamar Rhodes, an indigent, was convicted of forgery (Pen. Code, § 470) after a jury trial at which he was represented by appointed counsel who, at the time of the appointment and trial was the City Attorney of Hanford.[1] Hanford is the county seat of Kings County wherein the trial was conducted. The responsibilities of a city attorney include, inter alia, the prosecution of persons accused of violating city ordinances. (Gov. Code, § 41803; *People ex rel. Chapman* v. *Rapsey* (1940) 16 Cal.2d 636, 643 [107 P.2d 388].)[2] Defendant's principal contention on appeal is that he was denied his constitutional right to effective assistance of counsel because the prosecutorial responsibilities of a city attorney constitute a conflict of interest which

---

[1]The People argue that the record does not properly reflect the fact that Lawrence W. Clawson, defendant's appointed counsel, was City Attorney of Hanford at the time he represented defendant. However, the identity of a public official is a proper subject for judicial notice. (Evid. Code, §§ 452, subd. (g), 459, subd. (a); *Himmelmann* v. *Hoadley* (1872) 44 Cal. 213, 226; *Perry* v. *Meikle* (1951) 102 Cal.App.2d 602, 604 [228 P.2d 17]; *In re Spiers* (1936) 15 Cal.App.2d 487, 491 [59 P.2d 838].) Thus, we take judicial notice that Clawson served as city attorney for the City of Hanford at the time he acted as counsel for defendant.

[2]A city attorney may be authorized by the county district attorney to prosecute state law misdemeanors committed within the city. (Gov. Code, § 41803.5.) However, there is no evidence in the record that City Attorney Clawson had ever received authorization to prosecute such violations of state law, and therefore we presume that his prosecutorial duties were limited to violations of municipal ordinances. In fact, there is some reason to believe that Clawson did not prosecute misdemeanors under Government Code section 41803.5. Attached to defendant's opening brief are unsworn statements by Clawson and Kings County District Attorney John O'Rourke to the effect that Clawson was never authorized to prosecute violations of state law.

precludes effective representation of criminal defendants.[3] Although we do not reach the issue of whether the appointment of a city attorney to represent indigent criminal defendants is constitutionally impermissible, we are of the view, for the reasons which follow, that vital interests of criminal defendants and the criminal justice system are adversely affected when public prosecutors are permitted to defend or assist in the defense of persons accused of crime. We accordingly conclude that it was contrary to public policy to appoint Hanford's city attorney to represent defendant and that defendant's conviction must therefore be reversed.[4]

█ It is settled that an indigent charged with committing a criminal offense is entitled to legal assistance unimpaired by the influence of conflicting interests. (*Glasser* v. *United States* (1942) 315 U.S. 60, 70 [86 L.Ed. 680, 699, 62 S.Ct. 457]; *People* v. *Chacon* (1968) 69 Cal.2d 765, 774 [73 Cal.Rptr. 10, 447 P.2d 106].)[5] Defendant in the instant case was tried for forgery, a violation of state law, and at the time of the trial the prosecutorial responsibilities of defendant's appointed counsel were limited to violations of municipal ordinances. (See *ante,* fn. 2.) Thus, the representation of defendant did not directly conflict with appointed counsel's official duties as city attorney. Notwithstanding the absence of such a direct conflict, there nevertheless are considerations of a practical nature which have a potentially debilitating effect on both the quality of the legal assistance rendered by a city attorney to criminal defendants and the ability of a city attorney to properly discharge his prosecutorial responsibilities.

We note, inter alia, that city police officers are the principal source of witnesses relied upon by a city attorney in prosecutions for violations of

---

[3]Government Code section 26540 prohibits a *district attorney* during his incumbency from defending or assisting in the defense of any person accused of a crime. In addition, Business and Professions Code section 6131, subdivision (a), prohibits the private law partners of district attorneys or other public prosecutors from assisting in any way in the defense of a criminal defendant where the prosecution is being carried out by the district attorney or public prosecutor who is the partner. There is, however, no express statutory provision prohibiting city attorneys who are public prosecutors, such as Clawson, from engaging in a private law practice in which they represent criminal defendants.

[4]Our holding today should not be construed as adversely reflecting upon the quality of legal counsel provided by Mr. Clawson in the instant case. To the contrary, the record demonstrates that Mr. Clawson competently represented defendant throughout all phases of the trial. Similarly, we suggest no criticism of Judge Rosson for appointing Mr. Clawson. There was no statutory or decisional law prohibiting such appointments and it was an established practice to appoint Hanford's city attorney to represent indigent criminal defendants.

[5]Although the *Glasser-Chacon* line of cases involves conflicts of interest where codefendants are represented by the same counsel, the standard set forth in those cases is equally applicable where, as here, the alleged conflict of interest arises out of counsel's obligations which are unrelated to the trial.

city ordinances. If these same police officers are witnesses in a case in which a city attorney is acting as defense counsel, he might be reluctant to engage in an exhaustive or abrasive cross-examination of such officers even though such might well be required. A city attorney in his capacity as defense counsel might also be influenced to dilute his criticism of local police conduct even though the situation calls for stressing the impropriety of police activity. In *Karlin* v. *State* (1970) 47 Wis.2d 452 [177 N.W.2d 318] the Wisconsin Supreme Court aptly explained the practical difficulties confronting a city attorney under similar circumstances: "the temptation might well arise to be not too hard on a police witness who is against your client today but would be the star witness for your prosecution tomorrow." (*Id.,* at p. 321.)

In the situation confronting a city attorney acting as a defense counsel there inevitably will arise a struggle between, on the one hand, counsel's obligation to represent his client to the best of his ability and, on the other hand, a public prosecutor's natural inclination not to anger the very individuals whose assistance he relies upon in carrying out his prosecutorial responsibilities. Such a conflict of interest would operate to deprive a criminal defendant of the undivided loyalty of defense counsel to which he is entitled.

This same potentially debilitating conflict of interest is operative when, as in the case at bench, the only police officers called as witnesses are members of neighboring law enforcement agencies.[6] Neighboring and overlapping law enforcement agencies have close working relationships, and resentment engendered by a city attorney within the membership of such agencies would have an adverse effect on the relationship of the city attorney with members of his local police department. In addition, as a public prosecutor a city attorney is granted courtesies and assistance by the police departments and prosecuting authorities of the county and other municipalities. It is possible that a vigorous and determined representation of a criminal defendant might result in the withdrawal or weakening of this helpful cooperation and, therefore, a city attorney might be tempted to temper his advocacy accordingly.

In addition to the foregoing considerations, we cannot ignore the public's interest in the successful prosecution of those guilty of crime. If, because of a vigorous representation of a criminal defendant by a public prosecu-

---

[6]In the case at bench it was unnecessary to call as witnesses any member of the Police Department of the City of Hanford. Defendant was arrested in the nearby City of Huron by an officer of the Huron Police Department, and at trial only three police officers testified, none of whom was employed by the City of Hanford.

tor there results a weakening of assistance provided by local and neighboring law enforcement agencies, the prosecutor's ability to enforce those criminal laws falling within the scope of his responsibilities as a city attorney would be severely undermined.[7] Indeed, this was the principal consideration which led the Committee on Professional Ethics of the American Bar Association to conclude that a public prosecutor in one state may not properly defend a person accused of a crime in a sister state, even though the case was to be tried in the latter state and the law of neither state prohibited the public prosecutor from engaging in such criminal defense work. (ABA Op. 30 (Mar. 2, 1931).) ■ ■ Thus, even if defendants' interests are unaffected, the proper functioning of the criminal justice system may be endangered where public prosecutors engage in the private representation of criminal defendants.[8]

Wholly apart from the detrimental effects engendered by the conflicting loyalties of defense counsel and public prosecutor, we are persuaded that there are other compelling public policy considerations which render it inappropriate for a city attorney with prosecutorial responsibilities to represent criminal defendants. It is essential that the public have absolute confidence in the integrity and impartiality of our system of criminal justice. This requires that public officials not only in fact properly discharge their responsibilities but also that such officials avoid, as much as is possible, the *appearance* of impropriety.[9] It is this latter consideration that underlies a series of rulings by the American Bar Association Ethics Committee in which it was concluded that the legal system would be adversely affected if public prosecutors accepted employment as crimi-

---

[7]As indicated in footnote 2, defendant's counsel had not been authorized pursuant to Government Code section 41803.5 by the district attorney to prosecute state law misdemeanors. However, such authorization could be granted at any time to a city attorney. Consequently, the private representation of criminal defendants by city attorneys could have adverse effects upon subsequent prosecutions of persons charged with committing state law misdemeanors as well as violations of municipal ordinances.

[8]The People do not challenge defendant's assertion that he was not informed until after the trial that his counsel was Hanford's city attorney. Although we need not here reach the issue of whether a city attorney may represent a criminal defendant where there is a full disclosure concerning the attorney's official position and responsibilities and the defendant nevertheless agrees or desires to be represented by such attorney, we note that since the interests of the criminal justice system as well as those of the defendant may be adversely affected if city attorneys are permitted to represent criminal defendants, the consent of the defendant alone is not sufficient to render such representation proper.

[9]See ABA Opinion 49 (Dec. 12, 1931) wherein it is stated that "If the [legal] profession is to occupy that position in public esteem which will enable it to be of the greatest usefulness, it must avoid not only all evil but likewise avoid the appearance of evil."

nal defense counsel.[10] The committee expressly concluded that if the responsibilities of a city attorney include the prosecution in any court of offenses against criminal statutes or municipal ordinances, the need to remain free of suspicion of impropriety made it improper for such a city attorney to defend any person accused of crime whether or not the offense is within the scope of his prosecutorial duties. (ABA Op. 34, *supra*.)[11] We believe that the committee was justifiably concerned that to the public it might appear that a public prosecutor who was representing criminal defendants would use his influence and position to extract favorable treatment for such defendants in order to further the success of his private professional career. Even the appearance of such impropriety could operate to weaken the public's confidence in the system of criminal justice.

To summarize, the nature and duties of a public prosecutor are inherently incompatible with the obligations of a criminal defense counsel. When a city attorney represents criminal defendants there arises the possibility that either the defendant's interest in a vigorous and determined advocacy or the public's interest in the smooth functioning of the criminal justice system will suffer. In addition, public confidence in the integrity of the criminal justice system could be adversely affected by the appearance of impropriety incident to a public prosecutor's private representation of a criminal defendant. Thus, the interests of both criminal defendants and the judicial system require that city attorneys who have prosecutorial responsibilities not represent criminal defendants. (Accord, *Karlin* v. *State, supra,* 177 N.W.2d 318, 322; see also *Goodson* v. *Peyton* (4th Cir. 1965) 351 F.2d 905, 909.) ■ We accordingly conclude that as a judicially declared rule of criminal procedure (see *People* v.

---

[10]See ABA Opinions 16 (June 11, 1929), 30, *supra,* 34 (Mar. 3, 1931), 142 (May 9, 1935) and 186 (July 24, 1938); see also, Los Angeles County Bar Association Committee on Legal Ethics Opinion 276 (Feb. 21, 1963) [a part-time city attorney may not ethically represent defendants in criminal cases even where the defense is undertaken in a jurisdiction different from the place of his employment]; ABA Opinions 118 (Dec. 14, 1934) [a county district attorney, whose duty it is to prosecute crimes committed within the county, may not, while in office, accept employment to obtain a pardon or parole of one convicted of a crime in another county]; 242 (June 20, 1942) [a city police judge (and by implication a city attorney) whose jurisdiction is limited to trials of misdemeanors and examinations in felony cases to determine if a defendant should be bound over for trial may not ethically represent criminal·defendants in the circuit court].

[11]In a subsequent ruling the committee did opine that where no adequate representation was otherwise available for indigent criminal defendants in a rural area, a city attorney, as well as a police judge and a juvenile court judge, could accept appointments to represent indigents in courts other than those in which they perform their official duties. (ABA Op. 55 (Dec. 14, 1931).) This ruling is limited to situations where the only alternative is no representation at all for the indigent, and thus is inapposite to the case at bench. (See ABA Op. 242, *supra*.)

*Vickers* (1972) 8 Cal.3d 451, 461 [105 Cal.Rptr. 305, 503 P.2d 1313]; *People* v. *Cahan* (1955) 44 Cal.2d 434, 442 [282 P.2d 905, 50 A.L.R.2d 513]) a city attorney with prosecutorial responsibilities may not defend or assist in the defense of persons accused of crime.[12] Since it was improper to appoint Hanford's city attorney to represent defendant, the judgment of conviction must be reversed.[13]

■ Defendant's argument that another trial after reversal of his conviction would violate his right not to be placed in double jeopardy is without merit. It is axiomatic that one who successfully attacks a judgment of conviction subjects himself to a retrial which may reach the same result. (*United States* v. *Ball* (1896) 163 U.S. 662, 672 [41 L.Ed. 300, 303-304, 16 S.Ct. 1192]; *People* v. *Henderson* (1963) 60 Cal.2d 482, 495 [35 Cal. Rptr. 77, 386 P.2d 677]; *People* v. *Green* (1956) 47 Cal.2d 209, 235 [302 P.2d 307].) Defendant's reliance on *Strunk* v. *United States* (1972) 412 U.S. 434 [37 L.Ed.2d 56, 93 S.Ct. 2260] and *In re Pfeiffer* (1968) 264 Cal.App.2d 470 [70 Cal.Rptr. 831] is misplaced. *Strunk* held that dismissal of the charges against the defendant was the appropriate remedy when the defendant had been denied his right to a speedy trial. And *Pfeiffer* concluded that pursuant to Penal Code section 1484[14] dismissal was warranted where 10 years had elapsed since the erroneous conviction for first degree robbery and the defendant had already served time on the void conviction equal to the total term of many first degree robbery con-

---

[12]The conclusion we reach in the case at bench also finds support in our decision in *People* ex rel. *Chapman* v. *Rapsey, supra,* 16 Cal.2d 636, in which we held that under the doctrine of "incompatible offices" a city attorney may not, during his tenure in office, also serve as city judge. The common law doctrine of incompatible offices provides that one individual may not simultaneously hold two public offices where the functions of the offices concerned are inherently inconsistent, as where there are conflicting interests, or where the nature and duties of the two offices are such as to render it improper from considerations of public policy for one person to retain both. (*Mott* v. *Horstmann* (1950) 36 Cal.2d 388, 391-392 [224 P.2d 11]; *People* ex rel. *Chapman* v. *Rapsey, supra,* 16 Cal.2d 636, 641-642; 3 McQuillin on Municipal Corporations, § 12.67 at p. 297.) Although we are not here confronted with a situation in which one person is occupying two incompatible public offices, we nevertheless are of the opinion that the same general principle should apply where, as here, the legal and ethical obligations which devolve upon an attorney who agrees to represent a client charged with a criminal offense are inherently incompatible with the responsibilities that such attorney has as a public office holder.

[13]Defendant questions the constitutionality of the practice of appointing city attorneys to represent indigent criminal defendants under a variety of theories: as a denial of effective assistance of counsel, equal protection of the law and due process. Our judicially declared rule renders a determination of these constitutional issues unnecessary.

[14]Section 1484 provides, inter alia, that habeas corpus proceedings must be disposed of "as the justice of the case may require."

victions. Both cases are inapposite to the case at bench and the record provides no basis for precluding a retrial of defendant.

The judgment is reversed and the cause remanded to the superior court for further proceedings consistent with the views expressed herein.

Tobriner, J., Mosk, J., and Sullivan, J., concurred.

**BURKE, J.**—I dissent. The majority holds that it is contrary to public policy to appoint a part-time city attorney to represent an indigent criminal defendant. However sage such a rule may be as a procedure for the future it does not follow that the instant conviction, in which no actual prejudice has been shown, must be reversed. On the contrary, I believe that in light of the evidence the retrial of this defendant will be an idle and judicially wasteful act.

The majority expresses concern for the "*potentially* debilitating effect" on the quality of legal assistance rendered by a part-time city attorney to criminal defendants. (*Ante,* p. 183; italics added.) It is conceded, however, that such representation, unlike other potential conflict of interest situations, is not prohibited by statute. (*Ante,* p. 183, fn. 3.) It is also conceded that the representation of defendant in the instant case "did not directly conflict with appointed counsel's official duties as city attorney."[1] (*Ante,* p. 183.) Moreover the majority unhesitatingly states that its holding "should not be construed as adversely reflecting upon the quality of legal counsel provided by Mr. Clawson [defendant's appointed counsel] in the instant case. To the contrary, the record demonstrates that Mr. Clawson competently represented defendant throughout all phases of the trial." (*Ante,* p. 183, fn. 4.) Apparently the majority fears some undemonstrated but supposedly inherent reluctance on the part of any city attorney to engage in "an exhaustive or abrasive cross-examination" of police officer witnesses. (*Ante,* p. 184.) Such a reluctance might be expected if the defense attorney and the testifying police officers were all employed by the City of Hanford, but this is not our case. Here, no Hanford police were involved in defendant's prosecution and the crime and arrest took place in other cities. The majority's speculation that Hanford's city attorney might be tempted to temper his advocacy to avoid a possible weakening of relationships with authorities elsewhere in the county is pure speculation and not grounds for reversal.

[1]As city attorney the prosecutorial responsibilities of defendant's appointed counsel were limited to violations of *municipal* ordinances and defendant was tried for a violation of *state* law. (Pen. Code, § 470 [forgery].)

Although I agree that it is well to avoid any potential conflict of interest and thus, that a city attorney or even part-time city attorney should not accept a defense assignment, I cannot say that the procedure has resulted in a miscarriage of justice (Cal. Const., art. VI, § 13; *People* v. *Watson*, 46 Cal.2d 818, 836 [299 P.2d 243]), and, therefore, would affirm the judgment of the trial court.

McComb, J., and Clark, J., concurred.

Respondent's petition for a rehearing was denied September 12, 1974. McComb, J., Burke, J., and Clark, J., were of the opinion that the petition should be granted.