Edward Lee BUMGARDNER,
Petitioner-Appellant,

v.

STATE of Iowa, Respondent-Appellee.

No. 85–1549.

Court of Appeals of Iowa.

Dec. 23, 1986.

Charles Harrington, Appellate Defender, and Raymond E. Rogers, Asst. Appellate Defender, for petitioner-appellant.

Thomas J. Miller, Atty. Gen., Pamela Greenman Dahl, Asst. Atty. Gen., and James Hoffman, Asst. Scott Co. Atty., for respondent-appellee.

Heard by DONIELSON, P.J., and HAYDEN and SACKETT, JJ.

HAYDEN, Judge.

On February 27, 1981, a Scott County jury found defendant guilty of burglary in the second degree. The trial court, on March 24, 1981, entered judgment and sentenced defendant, as an habitual offender, to a term of imprisonment not to exceed fifteen years.

During trial defendant utilized the defense of entrapment, alleging he had been pressured into committing the crime by an undercover Davenport police officer and a police informant. In his testimony defendant alleged widespread corruption in the Davenport police department; involving drugs, burglaries, and cover-ups. Specifically he accused the Scott County Attorney and assistant county attorney of lying.

The defendant took a direct appeal to the supreme court, which, in an order filed June 1, 1982, affirmed the defendant's conviction in an unpublished opinion. The court reserved for postconviction relief the question of whether the defendant was denied effective assistance of counsel because his court-appointed attorney also acted as a prosecutor for the city of LeClaire. In June, 1982, defendant filed his first application for postconviction relief, alleging ineffective assistance of counsel. After an evidentiary hearing the trial court denied relief, in a ruling filed January 13, 1983. Defendant took direct appeal, and on June 26, 1984, this court affirmed the denial of relief but preserved for further review the conflict of interest issue, since the first

postconviction court had failed to permit the defendant to develop a record on the issue. On July 11, 1984, defendant filed a second application for postconviction relief. In August of 1985 a hearing was held and an order issued vacating the habitual offender sentence and resentencing defendant to a term of imprisonment not to exceed ten years. On October 7, 1985, the district court denied postconviction relief on the conflict of interest issue.

Defendant has appealed from the denial of postconviction relief. He reiterates his contention that his trial attorney's service as a part-time prosecutor placed the attorney in a conflict of interest and resulted in ineffective assistance. Defendant argues the court should adopt a rule that simultaneous service as a criminal defense attorney and as a part-time prosecutor is *per se* a conflict of interest, if the prosecutorial employment is not disclosed to the criminal defense client. In the alternative, he argues the record in the present case demonstrates an actual conflict of interest; he states the attorney's service as a part-time prosecutor for a small Scott County town gave the attorney a conflict of interest in attempting to develop defendant's entrapment arguments and his accusations of corruption and lying against various Scott County law enforcement officials.

When the petitioner asserts his constitutional right to a fair trial was violated, this court makes an independent evaluation of the totality of the relevant circumstances, the equivalent of de novo review. *Taylor v. State*, 352 N.W.2d 683, 684 (Iowa 1984).

Defendant claims this alleged conflict of interest deprived him of his right to effective assistance of counsel under Article I, sections 9 and 10 of the Iowa Constitution and the Sixth and Fourteenth Amendments of the United States Constitution. As a preventive measure defendant urges the court to adopt a per se rule requiring a finding of reversible error when a city attorney, with prosecutorial responsibilities, represents a criminal defendant. We decline to follow such a course of reasoning.

We find the following language from *Dawson v. Cowan*, 531 F.2d 1374, 1376 (6th Cir.1976) persuasive:

> *Per se* rules frequently are fashioned when there is an unusually high risk of prejudice to a party and the proofs of prejudice may be difficult to establish; or when an important social policy will be served by a prophylactic rule; or a more definite standard is required to guide official conduct in future cases; or when case by case analysis places an unjustifiable burden on limited judicial resources.... We are also concerned that the adoption of a *per se* rule might make it difficult or impossible to secure appointed counsel for indigent defendants in sparsely settled communities where there are few lawyers, and most or all of them may have some governmental affiliation.

■ The current circumstance does not justify the adoption of a *per se* rule requiring automatic reversal. A *per se* reversal rule in the current situation would result in automatic reversal in cases where a city attorney represents a criminal defendant who is charged with violating state law, in an offense neither occurring in nor involving the municipality employing the city attorney. The appellant cites *People v. Rhodes*, 12 Cal.3d 180, 182–87, 115 Cal. Rptr. 235, 236–40, 524 P.2d 363, 364–68 (1974) for the proposition that an inherent conflict exists between the position of city counsel and criminal defense and such conflict could effect the counsel's relationship with neighboring and overlapping law enforcement agencies. *Id.* 12 Cal.3d at 184, 115 Cal.Rptr. at 238, 524 P.2d at 363. This language could, arguably, support appellant's position. However, the court in *Rhodes* also cited the American Bar Association Ethics Committee for the following:

> ... where no adequate representation was otherwise available for indigent criminal defendants in a rural area, a city attorney, as well as a police judge and a juvenile court judge, could accept appointments to represent indigents in courts other than those in which they perform their official duties. (ABA Op. 55 (Dec. 14, 1931).

*Id.* 12 Cal.3d at 186, f. 11, 115 Cal.Rptr. at 239, f. 11, 584 P.2d at 367 f. 11.

To hold that a part-time prosecutor for a city, whose obligation is to enforce municipal ordinances, has an inherent conflict with a criminal defendant, who is accused of a state crime in a separate city, would hamper the legal process in this state. Due to the geographical composition of our state and the small number of rural counsel, we reject appellant's request.

Appellant further contends, if this court does not adopt the *per se* rule, the record demonstrates an actual conflict of interest thereby requiring reversal of his burglary conviction.

"In order to establish a violation of the Sixth Amendment, a defendant who raised no objection at trial must demonstrate that an actual conflict of interest adversely affected his lawyer's performance." *Cuyler v. Sullivan*, 446 U.S. 335, 348, 100 S.Ct. 1708, 1718, 64 L.Ed.2d 333, 346 (1980). No showing of prejudice is required in a conflict of interest ineffective assistance of counsel claim. *United States v. Mooney*, 769 F.2d 496, 500 n. 3 (8th Cir.1985). On the other hand, the general claim that counsel's actual performance was inadequate, requires a showing of actual prejudice. (citation omitted) *Id.*

In *Jackson v. Auger*, 239 N.W.2d 180, 183 (Iowa 1976) the supreme court, in considering dual representation, set forth the following:

> The burden is upon the defendant to demonstrate a substantial possibility that the situation of dual representation created a conflict between his interests and the interests of the other person or persons represented. Actual prejudice need not be shown.

The supreme court interpreted this standard as saying it is enough for petitioner to show there is "substantial possibility" that conflict of interest affected the lawyer's representation. *Nichol v. State*, 309 N.W.2d 468, 470 (Iowa 1981).

Defendant's trial counsel, John Mullen, worked as a part-time prosecutor for the city of LeClaire, dealing solely in the prosecution of municiple ordinances. At the time he represented appellant, Mr. Mullen worked for LeClaire. Appellant was not aware of this fact until six months after the trial. During the postconviction hearing, held on August 28, 1985, the defendant asserted two factors that affected Mr. Mullen's representation; a disagreement on jury selection and failure by Mr. Mullen to ask questions requested by defendant. Pursuant to our law the defendant must show: (1) an actual conflict; (2) non-waiver of the conflict; and (3) a substantial possibility that the conflict affected counsel's representation.

■ From the postconviction hearing we find no evidence of an actual conflict between Mr. Mullen's part-time employment for the city of LeClaire as a prosecutor for municipal ordinances and his representation of defendant for a burglary of a Davenport home. All of the police officers called to testify at trial were either from Bettendorf or Davenport, no law enforcement officers from LeClaire were involved in the arrest. As a part-time prosecutor Mr. Mullen dealt solely with the municipal ordinances of LeClaire; defendant was charged under state law. Mr. Mullen had no contact, in his part-time position, with the law enforcement agencies involved in defendant's arrest. From these factors we conclude no actual conflict existed. In fact, the trial court found and we agree that Mr. Mullen's representation was more than competent.

AFFIRMED.