**IN THE COURT OF APPEALS OF IOWA**

No. 14-1198
Filed November 25, 2015

**DAVID PALMER DEWBERRY,**
    Applicant-Appellant,

**vs.**

**STATE OF IOWA,**
    Respondent-Appellee.
_____

Appeal from the Iowa District Court for Decatur County, John D. Lloyd (summary judgment) and Martha L. Mertz (hearing), Judges.

Applicant appeals the district court decision denying his request for postconviction relief from his conviction for first-degree robbery. **AFFIRMED.**

Unes J. Booth of Booth Law Firm, Osceola, for appellant.

Thomas J. Miller, Attorney General, and Alexandra Link, Assistant Attorney General, for appellee.

Considered by Vogel, P.J., Bower, J., and Mahan, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2015).

**MAHAN, Senior Judge.**

Applicant David Dewberry appeals the district court decision denying his request for postconviction relief from his conviction for first-degree robbery. We determine Dewberry has not shown he received ineffective assistance on the grounds defense counsel permitted him to plead guilty to first-degree robbery when there was not a sufficient factual basis in the record for his plea. The court properly granted summary judgment on this issue. Also, Dewberry has not shown he received ineffective assistance due to a conflict of interest by his defense counsel. We affirm the decision of the district court denying Dewberry's request for postconviction relief.

## I. Background Facts & Proceedings.

According to the minutes of evidence, at about 10:45 p.m. on July 16, 2011, Dewberry and Cody Rollins drove to the home of then Congressman Leonard Boswell in Davis City. Rollins stayed in the car while Dewberry, who was armed with a gun and wearing a black ski mask, entered the home. Dewberry put the gun to the head of Boswell's daughter, Cynthia Brown, and demanded money. Boswell came to the aid of Cynthia and engaged in a physical altercation with Dewberry. During the struggle, Dewberry, Boswell, and Cynthia fell down a flight of stairs. Dewberry broke free and ran back up the stairs. He encountered Boswell's wife, Darlene, threatened her with the gun, and again demanded money. Boswell's grandson, Mitchell Brown, heard the incident occurring and got a 12-gauge shotgun. Mitchell pointed the shotgun at Dewberry, who then ran out the front door.

After the Boswells called 911, officers came to the home, including those from the Leon and Lamoni Police Departments. In a field near the home, officers found three black duffel bags, which contained tape, twine, garbage bags, and "a black handgun, which was later determined to be similar to a pellet gun." A witness stated Dewberry was "in possession of a black gun used for shooting white pellets." When interviewed by officers, Dewberry admitted "to carrying a 'fake' gun into the house, pointing it at the people inside, and demanding money."

Dewberry was charged with burglary in the first degree, three counts of robbery in the first degree, assault while participating in a felony, and going armed with intent.[1] His court-appointed counsel was also the part-time city attorney for Leon and Lamoni. Dewberry signed an acknowledgment and waiver of conflict of interest, stating he "waive[d] any actual or potential conflict [the attorney] may have between Defendant's interests and the interests of the Leon and Lamoni Police Departments and officers with each department."

Dewberry entered into a plea agreement in which he agreed to plead guilty to one count of first-degree robbery and the other counts would be dismissed. During the plea colloquy, the court informed Dewberry of the need to establish a factual basis for the plea:

> DEWBERRY: Well, Your Honor, on the day of July 16, 2011, I was going to commit a theft, and in doing so, I entered a residence that was not mine nor had any permission to enter and used the BB gun to put fear or threaten the residents of the home.
> THE COURT: Can you describe for me further what this gun was that you used?
> DEWBERRY: It was just a BB gun.
> THE COURT: Was it a spring-loaded BB gun, or was it $CO_2$?

---

[1] If Dewberry had been convicted of all the charges made against him, and if he received consecutive sentences, he would have been facing 110 years in prison.

DEWBERRY: It was just a spring-loaded, I think. It might have been $CO_2$. I don't know. I never shot it.

. . . .

THE COURT: Mr. Dewberry, one of the prongs, if you will, of a definition of a dangerous weapon is any instrument or device of any sort whatsoever which is actually used in such manner as to indicate that the defendant intends to inflict death or serious injury upon the other and which when so used is capable of inflicting death upon a human being. Did the gun that you described fit that definition?

DEWBERRY: Yes, Your Honor.

Dewberry also informed the court the minutes of evidence were true.

The court accepted Dewberry's guilty plea to first-degree robbery. He was sentenced to a term of imprisonment not to exceed twenty-five years. Dewberry's direct appeal was dismissed as frivolous pursuant to Iowa Rule of Appellate Procedure 6.1005.

On February 11, 2013, Dewberry filed an application for postconviction relief, claiming he received ineffective assistance of counsel. He asserted defense counsel should not have permitted him to plead guilty when there was not a sufficient factual basis to show the gun used during the robbery was a dangerous weapon. He also asserted he had not been fully informed of any actual or potential conflict of interest when he signed the waiver.

The State filed a motion for summary judgment, which was resisted by Dewberry. After a hearing the district court granted the motion on the issue of whether the gun used during the robbery was a dangerous weapon. The court found Dewberry admitted on the record during the guilty plea proceedings that the particular gun used during the robbery was actually capable of inflicting death upon a human being. Based on Dewberry's statement, the court concluded he could not show he received ineffective assistance on the ground defense counsel

permitted him to plead guilty without a factual basis for the plea. On the issue of whether defense counsel had a conflict of interest, the court determined there were genuine issues of material fact and determined the issue was not appropriate for summary judgment.[2]

After an evidentiary hearing, the district court issued a ruling denying Dewberry's application for postconviction relief on his claim he received ineffective assistance due to a conflict of interest by his defense attorney. The court found there was no evidence defense counsel had an actual conflict of interest. Dewberry appeals the district court decision denying his request for postconviction relief.

## II. Factual Basis.

Dewberry contends he received ineffective assistance because defense counsel permitted him to plead guilty to first-degree robbery when there was not a sufficient factual basis for the plea. He claims there is no evidence to show he was armed with a dangerous weapon at the time of the robbery. He asserts the court improperly granted summary judgment to the State on this claim. Summary judgment may be granted in postconviction proceedings "when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *State v. Manning*, 654 N.W.2d 555, 560 (Iowa 2002); *see also* Iowa Code § 822.6 (2013).

---

[2] Dewberry filed a motion to enlarge or amend the district court's summary judgment ruling. The case proceeded to a postconviction hearing before there was a ruling on the motion, and the court permitted evidence on both issues due to the possibility the motion to enlarge or amend might be granted. The motion to enlarge or amend was ultimately denied by the court. Therefore, the court's ruling granting summary judgment to the State on the dangerous weapon issue remained in effect.

We review claims of ineffective assistance of counsel de novo. *Ennenga v. State*, 812 N.W.2d 696, 701 (Iowa 2012). To establish a claim of ineffective assistance of counsel, an applicant must show (1) the attorney failed to perform an essential duty and (2) prejudice resulted to the extent it denied the applicant a fair trial. *State v. Carroll*, 767 N.W.2d 638, 641 (Iowa 2009).

"It is a responsibility of defense counsel to ensure that a client does not plead guilty to a charge for which there is no objective factual basis." *State v. Finney*, 834 N.W.2d 46, 54 (Iowa 2013). "It follows that no advice to plead guilty would be considered competent absent a showing of a factual basis to support the crimes to which the accused has elected to plead guilty." *Id.* at 54-55. "The determination of whether there is a factual basis in the record to support the charge to which the defendant seeks to plead guilty is an objective inquiry." *Id.* at 55. In determining whether there is a factual basis, we may examine the entire record before the district court. *Id.* at 62.

Robbery in the first degree occurs when, "while perpetrating a robbery, the person purposely inflicts or attempts to inflict serious injury, or is armed with a dangerous weapon." Iowa Code § 711.2 (2011). The term "dangerous weapon" is defined in section 702.7:

> A *"dangerous weapon"* is any instrument or device designed primarily for use in inflicting death or injury upon a human being or animal, and which is capable of inflicting death upon a human being when used in the manner for which it was designed . . . . Additionally, any instrument or device of any sort whatsoever which is actually used in such a manner as to indicate that the defendant intends to inflict death or serious injury upon the other, and which, when so used, is capable of inflicting death upon a human being, is a dangerous weapon.

The minutes of evidence show Dewberry was armed with a black handgun, which was "determined to be similar to a pellet gun." The minutes also state Dewberry was "in possession of a black gun used for shooting white pellets." The witnesses to the home invasion described the weapon as a "pistol," "semi-automatic pistol," or "handgun." During the plea colloquy Dewberry stated he "used the BB gun to put fear or threaten the residents of the home." He stated it might have been spring-loaded or might have used $CO_2$. When the court informed Dewberry of the definition of a dangerous weapon, he agreed the gun used in the offense fit the definition of a dangerous weapon. Also, Dewberry told the court the minutes of evidence were true. Defense counsel stated he discussed with Dewberry, "the collateral defense of asserting that the gun used [was] not the equivalent of a dangerous weapon," and they believed there was sufficient evidence to refute the defense.

In *State v. Dallen*, 452 N.W.2d 398, 398-99 (Iowa 1990), the Iowa Supreme Court determined "a .177-caliber $CO_2$ revolver capable of firing either pellets or BB's" was a dangerous weapon. The State presented evidence the gun was capable of inflicting death upon a human being. *Dallen*, 452 N.W.2d at 399. An expert testified a BB shot through the eye into the base of the brain could cause death. *Id.* Also, "a BB shot could damage an artery causing sufficient blood loss to produce death." *Id.* The court concluded, "the evidence would permit the jury to find the BB gun was a dangerous weapon." *Id.*

The district court granted summary judgment to the State on this issue, finding:

It was a question of fact as to whether or not the particular gun used by defendant was actually capable of inflicting death upon a human being. Plaintiff acknowledged that it was and that he used it in a manner designed to convey that message. The plaintiff was not asked if his gun was a dangerous weapon without more explanation. He was asked if it was true that his gun could take a human life and he admitted that it could. Based on the way in which the guilty plea was taken, this court sees no ineffective assistance of counsel with respect to the dangerous weapon issue.

We agree with the district court's conclusion. Dewberry specifically stated on the record at the plea colloquy that the weapon he used in the robbery met the definition of a dangerous weapon. When asked if the gun was "actually used in such manner as to indicate that the defendant intends to inflict death or serious injury upon the other and which when so used is capable of inflicting death upon a human being," Dewberry responded that it was. Furthermore, under *Dallen*, a BB gun may be considered a dangerous weapon. *Id.* Defense counsel stated at the plea colloquy he had discussed with Dewberry whether the gun used in the offense met the definition of a dangerous weapon, and they concluded the State could present sufficient evidence to refute this defense.

We determine Dewberry has not shown he received ineffective assistance because defense counsel permitted him to plead guilty to first-degree robbery when there was not a sufficient factual basis in the record for his plea. There was a sufficient factual basis in the record to show Dewberry committed robbery while armed with a dangerous weapon. *See Finney*, 834 N.W.2d 46 at 62 (noting there is no requirement that the record contain evidence to prove the offense beyond a reasonable doubt, "but only that there be a factual basis to support the charge"). We determine the court properly granted summary judgment on this issue.

### III. Conflict of Interest.

Dewberry claims he received ineffective assistance because his defense counsel had a conflict of interest. Defense counsel was the part-time city attorney for Leon and Lamoni. His job duties included providing legal advice to police officers in those cities. According to the minutes of evidence, the Leon Police Department and the Lamoni Police Department were among the authorities who responded to the 911 call from the Boswell home. Officer Daniel Lynch of the Leon Police Department and officer Steven Barnley of the Lamoni Police Department were listed as witnesses in the minutes of evidence.

At the time defense counsel was appointed to represent Dewberry, he informed him "that this could be a conflict," and "if he ever was concerned about that, he should let me know." Defense counsel told Dewberry that if he was concerned, defense counsel would withdraw and Dewberry could be appointed a different attorney. Defense counsel had previously represented Dewberry as a guardian ad litem in juvenile court proceedings. Defense counsel denied having any contact with the Leon and Lamoni officers concerning Dewberry's criminal case.

Dewberry agreed to have defense counsel continue to represent him. Defense counsel drew up an acknowledgment and waiver of conflict of interest. The document stated:

> [T]he Defendant, by his signature hereto, waives any actual or potential conflict [defense counsel] may have between Defendant's interests and the interests of the Leon and Lamoni Police Departments and officers with each department, indicates his desire that [defense counsel] continue to represent the Defendant in this matter, and confirms making this waiver of conflict voluntarily and free of any impairment, threats, duress or coercion.

Dewberry signed the acknowledgment and waiver.

At the postconviction hearing Dewberry testified that if he had a better understanding of Iowa law regarding conflict of interests he would not have signed the waiver. He stated he did not believe defense counsel had not exchanged information with the police departments of Leon and Lamoni, although Dewberry had no proof information was exchanged. Dewberry also testified there may have been a conflict because defense counsel had represented Dewberry and his mother at different times in the past. Dewberry believed that if he had a different attorney, who did not have a conflict of interest, he may have received a better plea offer.

When an applicant claims ineffective assistance based on a conflict of interest, if the applicant shows an actual conflict of interest that the trial court should have known about, yet failed to inquire into, we presume there was prejudice. *State v. Smitherman*, 733 N.W.2d 341, 346-47 (Iowa 2007). "[E]ven where the trial court fails to inquire into a potential conflict of which it should have been aware, the defendant still has to establish that the alleged conflict materialized into an *actual* conflict." *State v. Vaughan*, 859 N.W.2d 492, 500 (Iowa 2015). A defendant may demonstrate an actual conflict "by showing that the conflict adversely affected his counsel's performance." *Id.* An applicant must show: (1) an actual conflict; (2) non-waiver of the conflict; and (3) a substantial possibility that the conflict affected counsel's representation. *Bumgardner v. State*, 401 N.W.2d 211, 214 (Iowa Ct. App. 1986).

The district court found Dewberry had failed to show an actual conflict between defense counsel's part-time employment as the city attorney for Leon and Lamoni and his representation of Dewberry in the present case. The court noted, "City attorneys do not handle serious state crimes, as charged in Dewberry's case, nor do city attorneys prosecute such crimes." A similar issue arose in *Bumgardner*, 401 N.W.2d at 214, where an applicant's defense counsel also worked as a part-time city prosecutor. We found there was no actual conflict because as a part-time city prosecutor defense counsel was involved solely with municipal ordinances and the applicant had been charged under state law. *Bumgardner*, 401 N.W.2d at 214. Furthermore, there was no evidence defense counsel had contact with the officers involved in this case. When questioned on the issue, Dewberry offered only speculation that such contact might have occurred. We agree with the district court's conclusion Dewberry failed to show an actual conflict.

The district court additionally found that even if there had been a conflict, Dewberry waived any actual or potential conflict of interest in the acknowledgment and waiver. Moreover, Dewberry did not show a substantial possibility that the conflict affected counsel's representation. We agree with the court's conclusions. Dewberry has not shown he received ineffective assistance due to a conflict of interest by his defense counsel.

We affirm the decision of the district court denying Dewberry's request for postconviction relief from his conviction for first-degree robbery.

**AFFIRMED.**